ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
STEPHANIE ALBRECHT
Deputy Attorney General
State Bar No. 281474
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6166
  Fax: (916) 731-2124
  E-mail: Stephanie.Albrecht@doj.ca.gov
*Attorneys for Defendants Randy W. Hawkins,
President of the California Medical Board, Laurie
Rose Lubiano, Vice President of the California
Medical Board, Ryan Brooks, Secretary of the
California Medical Board, Reji Varghese,
Executive Director of the California Medical
Board, and Marina O'Connor, Chief of Licensing
of the California Medical Board, in their official
capacities[1]*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AZADEH KHATIBI, M.D.,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**RANDY W. HAWKINS, in his official capacity as President of the Medical Board of California,** *et al.*,<br><br>Defendants. | 2:23-cv-06195-DSF-E<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Date:       November 20, 2023<br>Time:       1:30 p.m.<br>Courtroom: 7D<br>Judge:    The Honorable Dale S. Fischer<br>Trial Date: Not set<br>Action Filed: August 1, 2023 |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Randy W. Hawkins is automatically substituted as a defendant in place of his predecessor, former President of the California Medical Board Kristina Lawson, Laurie Rose Lubiano is automatically substituted as a defendant in place of her predecessor, former Vice President of the California Medical Board Randy W. Hawkins, and Ryan Brooks is automatically substituted as a defendant in place of his predecessor, former Secretary of the California Medical Board Laurie Rose Lubiano.

1

## TABLE OF CONTENTS

2

**Page**

3

4   Introduction..................................................................................................1

5   Background ..................................................................................................2

6         I.     The Parties.......................................................................................2

7         II.    State Laws and Regulations Govern the Curriculum of
              Continuing Medical Education Courses ...................................3

8         III.   Allegations in the Complaint ......................................................4

9

10  Legal Standard .............................................................................................6

    Argument .....................................................................................................6

11        I.     Plaintiffs Fail to State a Free Speech Claim ...........................6

12            A.    The Speech at Issue Is Government Speech Not Subject to
                   First Amendment Protection.........................................7

13            B.    Even if the Speech at Issue Were Protected, Plaintiffs Fail
                   to State a Compelled Speech Claim .........................12

14

15  Conclusion ................................................................................................13

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3
**CASES**

4

*Ashcroft v. Iqbal*

5
    556 U.S. 662 (2009) ...................................................................................6

6

*Brown v. Li*

7
    308 F.3d 939 (9th Cir. 2002) ................................................................1, 9

8

*Burwell v. Portland School District No. 1J*

9
    No. 3:19-cv-00385-JR, 2019 WL 9441663 (D. Or. Mar. 23, 2010) ...........11, 12

10

*California Parents for the Equalization of Educational Materials v.
    Noonan*

11
    600 F.Supp.2d 1088 (E.D. Cal. 2009) .........................................................9

12

*California Parents for the Equalization of Educational Materials v.
    Torlakson*

13

14
    267 F.Supp.3d 1218 (N.D. Cal. 2017) ...................................................10, 11

15

*Downs v. Los Angeles Unified School Dist.*
    228 F.3d 1003 (9th Cir. 2000) ...........................................................10, 11

16

17

*Hazelwood Sch. Dist. v. Kuhlmeier*
    484 U.S. 260 (1988) ...................................................................................9

18

*Johanns v. Livestock Mktg. Ass'n*

19
    544 U.S. 550 (2005) ...............................................................................11, 12

20

*Johnson v. Riverside Healthcare Sys., LP*

21
    534 F.3d 1116 (9th Cir. 2008) ...................................................................6

22

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*

23
    416 F.3d 940 (9th Cir. 2005) .....................................................................13

24

*Nampa Classical Academy v. Goesling*

25
    447 Fed. Appx. 776 (9th Cir. 2011) ..........................................................10

26

*Pleasant Grove City v. Summum*
    555 U.S. 460 (2009) ...................................................................................7

27

28

1
2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3
4
*Riley's American Heritage Farms v. Claremont Unified*
     No. EDCV 18-2185, 2019 WL 3240105 (C.D. Cal. Mar. 6, 2019) ................... 10

5
6
*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*
     576 U.S. 200 (2015) ....................................................................................... 7, 10

7
8
*Watison v. Carter*
     668 F.3d 1108 (9th Cir. 2012) ............................................................................. 6

9
**STATUTES**

10
Cal. Bus. & Prof. Code

11
12
13
14
15
16
     § 2190 ................................................................................................................ 7, 8
     § 2190.1 ......................................................................................................... 5, 6, 12
     § 2190.1(b)(1) ....................................................................................................... 8
     § 2190.1(d)(1) ....................................................................................................... 3
     § 2190.1(d)(2) ....................................................................................................... 3
     § 2190.1(d)(3) ....................................................................................................... 4
     § 2190.1(e) ............................................................................................................. 3
     § 2190.1(f) ............................................................................................................. 8
     § 2190.15 ............................................................................................................... 8

17
18
Cal. Code Regs. Title 16

19
20
     § 1336(a) ................................................................................................................ 3
     § 1337(b) ................................................................................................................ 9

21
**COURT RULES**

22
Fed. R. Civ. P.

23
     Rule 12(b)(6) ......................................................................................................... 6

24
     Rule 25(d) .............................................................................................................. 3

25
26
27
28

**INTRODUCTION**

California law requires all continuing medical education courses to include discussion of implicit bias as part of their curriculum, if the courses will be used to satisfy a licensed physician's minimum continuing educational requirement for licensure.  Plaintiffs, who teach continuing medical education courses, claim that this requirement burdens their free speech rights because it compels them to teach on a subject on which they would otherwise remain silent.  But the requirement that these courses cover certain subjects necessary for state licensure does not implicate Plaintiffs' free speech rights at all.  Therefore, Plaintiffs' claims fail as a matter of law and should be dismissed without leave to amend.

Under Supreme Court and Ninth Circuit precedent, the content of educational courses that are subject to oversight by the government constitutes government speech that is not subject to First Amendment protection.  "[U]nder the Supreme Court's precedents, the curriculum of a public educational institution is one means by which the institution itself expresses its policy, a policy with which others do not have a constitutional right to interfere." *Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002).  Here, discussion of implicit bias is speech that the State Legislature requires to be included in continuing medical education courses used to qualify for licensure.  And as Plaintiffs acknowledge, the Medical Board of California "is responsible for regulating and licensing the practice of medicine in California," and the Board's Chief of Licensing is responsible "for enforcing state requirements for continuing medical education."  (ECF No. 1 at ¶¶ 8-12.)  Accordingly, the speech at issue constitutes government speech.  As a matter of law, government speech is not subject to scrutiny under the First Amendment.

Even if the speech at issue were private speech entitled to First Amendment protection, the complaint is facially and incurably defective.  Plaintiffs do not allege that discussion of implicit bias in the courses they teach would be readily associated with them, a requirement for any compelled speech claim.

1

1    Thus, Plaintiffs fail to state a claim upon which relief can be granted, and the

2    defects in their complaint cannot be cured by amendment.  Accordingly, the court

3    should dismiss the complaint with prejudice.

4                                    **BACKGROUND**

5    **I.    THE PARTIES**

6    Plaintiffs are residents of California who teach continuing medical education

7    courses for credit in California.  (ECF No. 1 at ¶¶ 5-7.)  Plaintiff Khatibi allegedly

8    is a California-licensed physician and board-certified ophthalmologist who has

9    taught medical education courses for credit in California on many topics in

10   ophthalmology, including retinal tumors, glaucoma, and other ocular diseases, as

11   well as systemic diseases, and has also organized courses, all "under the auspices of

12   approved continuing medical education providers."  (*Id.* at ¶¶ 5, 30.)  Plaintiff

13   Singleton allegedly is a California-licensed physician and board-certified

14   anesthesiologist who has taught continuing medical education courses for several

15   years and has also organized courses, also "under the auspices of approved

16   continuing medical education providers."  (*Id.* at ¶¶ 6, 37.)  Plaintiff Do No Harm is

17   a nonprofit corporation whose membership is comprised of physicians, healthcare

18   professionals, medical students, patients, and policymakers "united by a mission to

19   protect healthcare from radical, divisive, and discriminatory ideologies" and

20   allegedly includes at least one member who teaches, has taught, and intends to

21   teach continuing medical education courses for credit in California.  (*Id.* at ¶¶ 7, 43,

22   45.)

23   Defendant Randy Hawkins is the President of the Medical Board of California,

24   which "is responsible for regulating and licensing the practice of medicine in

25   California, including enforcing the Medical Practice Act."  (*Id.* at ¶ 8.)  Defendant

26   Laurie Rose Lubiano is the Vice President of the Medical Board of California,

27

28

1    Defendant Ryan Brooks is the Board's Secretary,[2] Defendant Reji Varghese is the

2    Board's Executive Director, and Defendant Marina O'Connor is the Board's Chief

3    of Licensing responsible "for enforcing state requirements for continuing medical

4    education." (*Id.* at ¶¶ 9-12.)  Defendants are sued in their official capacities. (*Id.* at

5    ¶¶ 8-12.)

6    **II.    STATE LAWS AND REGULATIONS GOVERN THE CURRICULUM OF
            CONTINUING MEDICAL EDUCATION COURSES**

7

8          California requires licensed physicians to complete 50 hours of approved

9    continuing medical education every two years.  Cal. Code Regs. tit. 16, § 1336(a).

10   Effective January 1, 2022, California law requires that continuing medical

11   education courses used to satisfy the licensure requirement cover implicit bias:

12          On and after January 1, 2022, all continuing medical education
            courses shall contain curriculum that includes the understanding of
13          implicit bias. . . . In order to satisfy [these] requirements . . . ,
            continuing medical education courses shall address at least one or
14          a combination of the following: (1) Examples of how implicit bias
            affects perceptions and treatment decisions of physicians and
15          surgeons, leading to disparities in health outcomes. (2) Strategies
            to address how unintended biases in decisionmaking may
16          contribute to health care disparities by shaping behavior and
            producing differences in medical treatment along lines of race,
17          ethnicity, gender identity, sexual orientation, age, socioeconomic
            status, or other characteristics.
18

19

20   Cal. Bus. & Prof. Code § 2190.1(d)(1), (e).

21          This implicit bias requirement does not apply to continuing medical education

22   courses dedicated solely to research or courses offered by a provider not located in

23   California.  Cal. Bus. & Prof. Code § 2190.1(d)(2).  Associations that accredit

24   continuing medical education courses are responsible for developing standards for

25          [2] As noted above, pursuant to Federal Rule of Civil Procedure 25(d), Randy
     W. Hawkins is automatically substituted as a defendant in place of his predecessor,
26   former President of the California Medical Board Kristina Lawson, Laurie Rose
     Lubiano is automatically substituted as a defendant in place of her predecessor,
27   former Vice President of the California Medical Board Randy W. Hawkins, and
     Ryan Brooks is automatically substituted as a defendant in place of his predecessor,
28   former Secretary of the California Medical Board Laurie Rose Lubiano.

1   compliance with the implicit bias requirements.  Cal. Bus. & Prof. Code §

2   2190.1(d)(3).

3   **III.  ALLEGATIONS IN THE COMPLAINT**

4          The complaint alleges that Plaintiffs should be able to choose the topics they

5   teach.  (ECF No. 1 at ¶ 2.)  Specifically, Plaintiffs allege that they should not be

6   compelled to include discussion of implicit bias in their continuing medical

7   education courses because "the efficacy of implicit bias training in reducing

8   disparities and negative outcomes in healthcare is controversial in the medical

9   community and lacks evidence," because Plaintiffs prefer to teach different topics,

10  and because they "do not want to espouse the government's view on implicit bias."

11  (*Id.* at ¶ 1.)  Plaintiffs further allege that their ability to offer continuing medical

12  education courses cannot be conditioned on the requirement that they "espouse the

13  government's favored view on a controversial topic."  (*Id.* at ¶ 2.)

14         Plaintiff Khatibi allegedly wishes to continue teaching continuing medical

15  education courses "but does not want to be compelled to include discussion of

16  implicit bias in her courses when there is no relevance to her topics, or discussion

17  of other topics is more relevant to minimize treatment outcome disparities,"

18  particularly given the "lack of evidentiary support for implicit bias trainings and the

19  significant time constraints usually present in delivering continuing medical

20  education courses, which limit the amount of information capable of being

21  discussed."  (*Id.* at ¶¶ 31-32.)  Because of time constraints in teaching courses,

22  Khatibi is "limited to only discussing the government's preferred topic and

23  viewpoints" on implicit bias, rather than having a more robust and appropriate

24  discussion of the topic.  (*Id.* at ¶ 33.)  However, without including a discussion of

25  implicit bias in her courses, the courses would not qualify for continuing medical

26  education credit in California and physicians likely would not take her courses.  (*Id.*

27  at ¶ 34.)

28

1    Similarly, Plaintiff Singleton alleges that "[i]ncluding discussion of implicit
2    bias in her courses would require her to change a portion of the talk to include
3    information on implicit bias at the expense of other information she would prefer to
4    include." (*Id.* at ¶¶ 39-40.)  Singleton does not want to include discussion of
5    implicit bias in her courses because she does not think the topic is "helpful and
6    important" but instead "believes that such trainings are harmful to physicians and
7    patients." (*Id.* at ¶ 41.)  Singleton believes that informing students of her
8    disagreement with teachings on implicit bias "would be insufficient to make clear
9    that the government's required message is not her own." (*Id.* at ¶ 41.)  Without
10   including a discussion of implicit bias in her courses, the courses would not qualify
11   for continuing medical education credit in California and physicians likely would
12   not take them.  (*Id.* at ¶ 42.)

13       Plaintiff Do No Harm has at least one member who does not want to include
14   discussion of implicit bias in the continuing medical education courses she teaches
15   because such trainings have not been shown to be effective and "instead risk
16   infecting healthcare decisions with divisive and discriminatory ideas." (*Id.* at ¶ 46.)
17   But for the requirements under Section 2190.1, she would not include a discussion
18   of implicit bias in the courses she teaches.  (*Id.* at ¶ 47.)

19       Plaintiffs contend that Section 2190.1 burdens their right to free speech
20   because it "compels Plaintiffs and their members to include discussion of implicit
21   bias in continuing medical education courses taught by them when they would
22   otherwise remain silent about implicit bias" (*id.* at ¶¶ 51-52) and "[c]ondition[s] the
23   eligibility for courses taught by Plaintiffs and their members to confer continuing
24   education credit on the requirement that Plaintiffs and their members include
25   discussion of implicit bias" (*id.* at ¶ 62).  Plaintiffs seek a declaration that Section
26   2190.1, on its face and as applied to them, violates the First and Fourteenth
27   Amendments of the United States Constitution, a permanent injunction restricting
28

the enforcement of Section 2190.1, and an award of fees, costs, and expenses.  (*Id.*, Prayer at ¶¶ A-B, D.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted.  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" cannot survive a motion to dismiss.  *Id.* at 678 (citation omitted).

Dismissal without leave to amend is appropriate when the court "determines that the pleading could not possibly be cured by the allegation of other facts."  *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (internal quotation marks and citation omitted).

## ARGUMENT

I.   **PLAINTIFFS FAIL TO STATE A FREE SPEECH CLAIM**

Plaintiffs claim that Section 2190.1 burdens their right to free speech because it compels them and their members to include discussion of implicit bias in the continuing medical education courses they teach when they would otherwise remain silent about implicit bias.  (ECF No. 1 at ¶¶ 51-52.)  But the speech at issue here—discussion of implicit bias—does not implicate Plaintiffs' free speech rights at all.  Instead, it is speech that the State Legislature requires to be included in continuing medical education courses used to qualify for state licensure and thus constitutes government speech.  As a matter of law, government speech is not

6

1  subject to scrutiny under the First Amendment.  And even if the speech at issue

2  here implicated Plaintiffs' free speech rights, Plaintiffs fail to state a compelled

3  speech claim because they do not allege that the speech at issue is readily

4  associated with them.

5      **A.    The Speech at Issue Is Government Speech Not Subject to First
           Amendment Protection**

6

7      "When government speaks, it is not barred by the Free Speech Clause from

8  determining the content of what it says."  *Walker v. Texas Div., Sons of*

9  *Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citing *Pleasant Grove City*

10  *v. Summum,* 555 U.S. 460, 467-68 (2009)).  "Were the Free Speech Clause

11  interpreted otherwise, government would not work . . . . It is not easy to imagine

12  how government could function if it lacked the freedom to select the messages it

13  wishes to convey."  *Id*. at 208 (internal quotation marks and citation omitted).

14  Government speech is thus "not subject to scrutiny under the Free Speech Clause."

15  *Summum*, 555 U.S. at 464.

16      In *Walker,* the Supreme Court considered three factors in determining that

17  specialty license plates constituted government speech: (1) whether the government

18  has historically used the medium to speak to the public; (2) whether the message is

19  closely identified in the public mind with the State; and (3) the degree of control the

20  State maintains over the messages conveyed.  576 U.S. at 210-13.  All three factors

21  weigh in favor of finding that the content of continuing medical education

22  courses—including discussion of implicit bias—constitutes government speech.

23      The medical profession is a highly regulated profession, and the Legislature

24  has historically used continuing education curriculum requirements as a way to

25  ensure that licensed physicians are adequately trained in subjects the State considers

26  essential to maintaining competence in the profession.  *See* Cal. Bus. & Prof. Code,

27  § 2190 (continuing education standards are designed "to ensure the continuing

28  competence of licensed physicians and surgeons").  For instance, between 1992 and

1    2021, curriculum geared toward the business of a medical practice, such as

2    "medical office management, billing and coding, and marketing" has expressly not

3    qualified for licensure credit as continuing medical education.  Cal. Bus. & Prof.

4    Code § 2190.1(f).  In 2021, the Legislature changed the law to allow up to 30

5    percent of the total hours of continuing medical education to include content on

6    practice management designed to provide better service to patients or have

7    management content designed to support managing a healthcare facility, including,

8    but not limited to, coding or reimbursement in a medical practice.  Cal Bus. & Prof

9    Code § 2190.15.  Since 2001, licensed physicians must complete mandatory

10   continuing education in the subjects of pain management and the treatment of

11   terminally ill and dying patients, or they may alternatively complete a course in the

12   treatment and management of opiate-dependent patients.  Cal. Bus. & Prof. Code,

13   §§ 2190.5, 2190.6.  And since 2006, all continuing medical education courses must

14   contain curriculum on cultural and linguistic competency.  Cal. Bus. & Prof. Code,

15   § 2190.1(b)(1).  Accordingly, the Legislature has historically used continuing

16   education course curriculum requirements to ensure that the content of the courses

17   adequately train physicians in subjects the Legislature considers necessary for

18   licensure.

19        Second, as Plaintiffs acknowledge, the Medical Board of California "is

20   responsible for regulating and licensing the practice of medicine in California,

21   including enforcing the Medical Practice Act."  (ECF No. 1 at ¶ 8.)  Licensed

22   physicians are required to complete 50 hours of continuing medical education every

23   two years, and the Medical Board determines which courses are acceptable for

24   credit.  (*Id.* at ¶¶ 13-15; *see also* Cal. Bus. & Prof. Code § 2190 ("the board shall

25   adopt and administer standards for the continuing education of [licensed physicians

26   and surgeons]").)  Continuing medical education providers must be approved by the

27   Medical Board.  (*See* ECF No. 1 at ¶¶ 30, 37.)  The Medical Board requires that

28   course content "be directly related to patient care, community health or public

8

1   health, preventive medicine, quality assurance or improvement, risk management,

2   health facility standards, the legal aspects of clinical medicine, bioethics,

3   professional ethics, or improvement of the physician-patient relationship." (*Id.* at ¶

4   15.) Generally, "[o]nly those courses and other educational activities that meet the

5   requirements Section 2090.1 of the [Business and Professions] code" and are

6   offered by specified organizations are acceptable for credit toward licensure. Cal.

7   Code Regs. tit. 16, § 1337(b). The Chief of Licensing for the Medical Board of

8   California "has principal responsibility for enforcing state requirements for

9   continuing medical education." (ECF No. 1 at ¶ 12.) And the Medical Board

10   regularly "audits physicians for compliance with the continuing education

11   requirement" and "audit[s] courses to determine whether the course is approved for

12   credit." (*Id.* at ¶ 17.)

13       Given that the Legislature and the Medical Board set the standards for

14   continuing medical education and control the content of continuing medical

15   education courses, discussion of implicit bias as part of these courses' curriculum is

16   clearly government speech. And it makes sense that it is government speech. The

17   medical profession, including the licensing of physicians and surgeons, is a matter

18   of grave public concern, and the State seeks to ensure that members of the public

19   entrust their health only to physicians who have the necessary education and

20   training.

21       The Supreme Court and courts in the Ninth Circuit have consistently held that

22   the content of educational courses constitutes government speech over which states

23   have broad discretion. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271

24   (1988) (educators are entitled to exercise greater control over expressive activities

25   designed to impart particular knowledge or skills to participants that students,

26   parents, and members of the public might reasonably perceive to bear the

27   imprimatur of the school); *Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002)

28   ("[U]nder the Supreme Court's precedents, the curriculum of a public educational

9

1    institution is one means by which the institution itself expresses its policy, a policy

2    with which others do not have a constitutional right to interfere."); *Riley's*

3    *American Heritage Farms v. Claremont Unified*, No. EDCV 18-2185 JGB (SHKx),

4    2019 WL 3240105 (C.D. Cal. Mar. 6, 2019), *6 ("the government speech doctrine

5    affords Defendants wide discretion in designing curriculum"); *California Parents*

6    *for the Equalization of Educational Materials v. Torlakson*, 267 F.Supp.3d 1218,

7    1234 (N.D. Cal. 2017) ("the State has the discretion to determine the content of its

8    curriculum"); *California Parents for the Equalization of Educational Materials v.*

9    *Noonan*, 600 F.Supp.2d 1088, 1111 (E.D. Cal. 2009) (same).

10         "A public's school curriculum . . . is an example of the government opening

11    up its own mouth, because the message is communicated by employees working at

12    institutions that are state-funded, state-authorized, and extensively state-regulated."

13    *Nampa Classical Academy v. Goesling*, 447 Fed. Appx. 776, 778 (9th Cir. 2011)

14    (internal quotation marks and citation omitted) (affirming dismissal of school's,

15    teachers', student's, and student parent's First and Fourteenth Amendment claims

16    challenging state's policy prohibiting use of certain texts).  Similarly here, the State

17    authorizes and heavily regulates the medical profession, including continuing

18    medical education requirements; it determines which curricula will be approved for

19    continuing medical education credit and who can teach courses for such credit.

20    Thus, just like a high school's bulletin board's postings that were subject to the

21    oversight of school principals constituted government speech (*Downs v. Los*

22    *Angeles Unified School Dist.*, 228 F.3d 1003, 1011 (9th Cir. 2000)), here the

23    subject of continuing medical education courses subject to oversight by the State's

24    Medical Board is attributable to the State and thus constitutes government speech.

25         The fact that private instructors like Plaintiffs teach the continuing medical

26    education curriculum set by the Legislature and Medical Board does not change the

27    analysis.  As the *Walker* Court explained, "[t]he fact that private parties take part in

28    the design and propagation of a message does not extinguish the governmental

10

1  nature of the message . . . ." 576 U.S. at 217. "Simply because the government

2  uses a third party for speech does not remove the speech from the realm of

3  government speech. . . .  A government entity may . . . express its views even when

4  utilizing assistance from private actors for the purpose of delivering a government-

5  controlled message." *Burwell v. Portland School District No. 1J*, No. 3:19-cv-

6  00385-JR, 2019 WL 9441663, *5 (D. Or. Mar. 23, 2010) (citing *Johanns v.*

7  *Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005) [where the government controls

8  the message, "it is not precluded from relying on the government-speech doctrine

9  merely because it solicits assistance from nongovernmental sources"]).  And

10  "[w]hen the government is formulating and conveying its message, "it may take

11  legitimate and appropriate steps to ensure that its message is neither garbled nor

12  distorted" by its individual messengers. *Downs v. Los Angeles Unified School*

13  *Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000 (school board may advocate gay and

14  lesbian awareness and tolerance and restrict the contrary speech of one of its

15  representatives).

16      For the same reasons, Plaintiffs' role in delivering the State-prescribed

17  continuing education materials to medical professionals as a precondition to state

18  licensure does not transform teachings of implicit bias from government speech into

19  private speech.  Although instructors may exercise some discretion in how they

20  teach continuing medical education courses, this does not change the principal

21  function of the Legislature or the Medical Board in setting curriculum standards for,

22  and overseeing, these courses.  Just like parents do not have the right to dictate the

23  curriculum in their children's public schools (*California Parents for the*

24  *Equalization of Educational Materials v. Torlakson*, 267 F.Supp.3d 1218, 1224

25  (N.D. Cal. 2017)), instructors of continuing medical education courses do not have

26  the right to dictate these courses' curriculum.

27

28

**B.      Even if the Speech at Issue Were Protected, Plaintiffs Fail to State a Compelled Speech Claim**

To allege a compelled speech claim, Plaintiffs must allege (1) speech; (2) to which they object; (3) that is compelled; and (4) that is readily associated with Plaintiffs.  *Burwell*, 2019 WL 9441663, at *3; *see also Johanns*, 544 U.S. at 568 (Thomas, J., concurring) ("The government may not, consistent with the First Amendment, associate individuals . . . involuntarily with [government] speech by attributing an unwanted message to them . . . .").

Nowhere does the complaint allege that teaching an understanding of implicit bias as part of the continuing medical education courses that Plaintiffs teach would be readily associated with them.  It is medical professionals that attend these courses to comply with their continuing medical educational requirements to maintain their State-issued license.  Undoubtedly these professionals understand that it is the Legislature and the Medical Board that set the standards for these courses and determine which courses are eligible for credit.  Indeed, Plaintiffs allege that the Medical Board "is responsible for regulating and licensing the practice of medicine in California" (ECF No. 1 at ¶ 8) and determines which continuing medical education courses are acceptable for credit (*id.* at ¶¶ 13-15).  Plaintiffs further acknowledge that the Chief of Licensing for the Medical Board "has principal responsibility for enforcing state requirements for continuing medical education" (*id.* at ¶ 12) and that the Medical Board regularly "audits physicians for compliance with the continuing education requirement" (*id.* at ¶ 17).  By Plaintiffs' own allegations, therefore, any discussion of implicit bias will be understood as coming from the Medical Board.  Nor do Plaintiffs allege that Section 2190.1 requires them to endorse the subject of implicit bias or that it prevents them from presenting their own messages on the topic.  Thus, Plaintiffs fail to allege that discussion of implicit bias would be associated with them.

12

1    Accordingly, Plaintiffs fail to state a claim for violation of their free speech
2  rights on the basis of compelled speech.
3                                   **CONCLUSION**
4    Leave to amend need not be granted if "it is clear that the complaint could not
5  be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
6  416 F.3d 940, 946 (9th Cir. 2005). Plaintiffs' claims fail as a matter of law, and the
7  defects in the complaint cannot be saved by an amendment. The court should not
8  grant Plaintiffs leave to amend.
9
10  Dated: October 10, 2023                  Respectfully Submitted,
11                                           ROB BONTA
                                             Attorney General of California
12                                           ANYA M. BINSACCA
                                             Supervising Deputy Attorney General
13
14
15                                           */s/* Stephanie Albrecht
                                             STEPHANIE ALBRECHT
16                                           Deputy Attorney General
                                             *Attorneys for Defendants Randy W.*
17                                           *Hawkins, President of the California*
                                             *Medical Board, Laurie Rose*
18                                           *Lubiano, Vice President of the*
                                             *California Medical Board, Ryan*
19                                           *Brooks, Secretary of the California*
                                             *Medical Board, Reji Varghese,*
20                                           *Executive Director of the California*
                                             *Medical Board, and Marina*
21                                           *O'Connor, Chief of Licensing of the*
                                             *California Medical Board, in their*
22                                           *official capacities*
23
24
25
26
27
28