JOSHUA P. THOMPSON, SBN 250955
JThompson@pacificlegal.org
CALEB R. TROTTER, SBN 305195
CTrotter@pacificlegal.org
DONNA G. MATIAS, SBN 154268
DMatias@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
(916) 419-7111

CAMERON T. NORRIS, Va. Bar No. 91624*
cam@consovoymccarthy.com
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423
*Pro hac vice

*Attorneys for Plaintiffs Azadeh Khatibi, M.D.,
Marilyn M. Singleton, M.D., and Do No Harm*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZADEH KHATIBI, M.D., *et al.*, | Case No.: 2:23-cv-06195-DSF-E |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| RANDY W. HAWKINS, in his official capacity as President of the Medical Board of California, *et al.*, | |
| Defendants. | Date: November 20, 2023 |
| | Time: 1:30 p.m. |
| | Courtroom: 7D |
| | Judge: Honorable Dale S. Fischer |
| | Trial Date: Not Set |
| | Action Filed: August 1, 2023 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION .............................................................................. 1

STATUTORY AND REGULATORY BACKGROUND .......................... 3

STANDARD OF REVIEW .................................................................. 3

ARGUMENT ..................................................................................... 4

I.   The Content of CME Courses Is Private Speech............................ 4

   A.   There is no history of CME courses as government speech........ 5

   B.   The public does not perceive the content of CMEs as coming from the government .................................................................. 7

   C.   The government does not control the content of CMEs.............. 8

   D.   This compelled speech case is fundamentally different from government speech and school curriculum cases ..................... 10

II.   Plaintiffs Sufficiently Allege a Compelled Speech Claim ........... 14

CONCLUSION ............................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988)...........................................................4

*Brown v. Li*,
  308 F.3d 939 (9th Cir. 2002).........................................................11

*Burwell v. Portland Sch. Dist. No. 1J*, No. 3:19-cv-00385-JR,
  2019 WL 9441663 (D. Or. Mar. 23, 2019) ...........................................13

*California Parents for Equalization of Educational Materials
  v. Noonan*, 600 F.Supp.2d 1088 (E.D. Cal. 2009)..............................12

*California Parents for Equalization of Educational Materials
  v. Torlakson*, 267 F.Supp.3d 1218 (N.D. Cal. 2017)..........................12

*Downs v. Los Angeles Unified Sch. Dist.*,
  228 F.3d 1003 (9th Cir. 2000).......................................................11

*Green v. Miss United States of America, LLC*,
  52 F.4th 773 (9th Cir. 2022) ........................................................14

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  484 U.S. 260 (1988)....................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)...........................................................6

*Kotler v. Webb*, No. 19-2682-GW-SKx, 2019 WL 4635168
  (C.D. Cal. Aug. 29, 2019) ........................................................6, 8, 9

*LSO, Ltd. v. Stroh*,
  205 F.3d 1146 (9th Cir. 2000).........................................................4

*Matal v. Tam*,
  582 U.S. 218 (2017)...................................................4, 5, 6, 7, 8, 9

*Miami Herald Publishing Co. v. Tornillo*,
  418 U.S. 241 (1974)....................................................................15

*Nampa Classical Academy v. Goesling*,
  447 F. App'x 776 (9th Cir. 2011).....................................................11

*National Institute of Family and Life Advocates v. Becerra
    (NIFLA)*, 138 S. Ct. 2361 (2018) ........................................ 12, 13, 15, 17

*Ogilvie v. Gordon*, No. 20-cv-01707-JST, 2020 WL 10963944
    (N.D. Cal. July 8, 2020) ............................................................... 6, 8, 9

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) ............................................................. 17

*Pleasant Grove City v. Summum*,
    555 U.S. 460 (2009) ................................................................... 5, 7, 9

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988) ............................................................................. 15

*Riley's American Heritage Farms v. Claremont Unified Sch.
    Dist.*, No. EDCV 18-2185-JGB-SHKx, 2019 WL 3240105
    (C.D. Cal. Mar. 6, 2019) ..................................................................... 12

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022) .......................................................................... 5, 9

*W. Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) .................................................................... 14, 15

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) .............................................................. 5, 6, 7, 9, 13

*Whitman v. American Trucking Ass'ns*,
    531 U.S. 457 (2001) .............................................................................. 2

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ............................................................................ 15

*Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of
    Ohio*, 471 U.S. 626 (1985) ................................................................ 12

**Statutes**

Cal. Bus. & Prof. Code § 2190.1(a) ............................................. 3, 8, 10

Cal. Bus. & Prof. Code § 2190.1(d) ................. 1, 2, 3, 8, 10, 12, 15, 16, 17

Cal. Bus. & Prof. Code § 2190.1(d)(3) ........................................... 3, 10

Cal. Bus. & Prof. Code § 2190.1(e) .................................................. 3, 10

Cal. Bus. & Prof. Code § 2190.1(g) ................................................. 3, 10

Cal. Bus. & Prof. Code § 6070.5 ........................................................ 14

**Other Authorities**

Cal. Code Regs. tit. 16, § 1336(a) ...........................................................3, 8

Cal. Code Regs. tit. 16, § 1337(a)–(b) ...................................................3, 10

Fed. R. Civ. P. 15(a) ............................................................................... 17

1

## INTRODUCTION

Plaintiffs Dr. Azadeh Khatibi and Dr. Marilyn M. Singleton, as well as at least one member of Plaintiff Do No Harm, are California-licensed physicians who teach and organize continuing medical education (CME) courses in California. ECF No. 1 ¶¶ 5–7. As a result of Cal. Bus. & Prof. Code § 2190.1(d), Plaintiffs are now required to include discussion of implicit bias in each course they teach. Defendants include the President and officers of the Medical Board of California (collectively "Board") who are tasked with enforcing Cal. Bus. & Prof. Code § 2190.1(d).

Implicit bias trainings are highly controversial. Among other divisive reasons, there is a lack of evidence showing they are effective in reducing implicit bias. ECF No. 1 ¶ 24. There is also evidence that the trainings can have harmful, counterproductive results. *Id.* at ¶ 25. Indeed, even the concept of implicit bias is controversial. *Id.* at ¶¶ 21, 23.

Owing to the controversy and efficacy of implicit bias trainings, the limited time available for instruction in continuing education courses, the typical lack of relevance to the courses taught by her, and the wish to not misleadingly elevate the role that implicit bias may play in causing disparities in healthcare, Dr. Khatibi does not want to be compelled to include discussion of implicit bias in the CME courses she teaches. *Id.* at ¶¶ 32–33.

Dr. Singleton likewise does not want to include implicit bias training in her courses because she believes it would be harmful to physicians and their patients. *Id.* at ¶ 41. And at least one of Do No Harm's members wishes to not discuss implicit bias in CME courses due to concerns that such discussions lead to divisive and discriminatory ideas. *Id.* at ¶ 46.

The Board does not contest the controversy around implicit bias trainings or that section 2190.1(d) compels Plaintiffs to include discussion of implicit bias in the CME courses they teach. Rather, the Board argues that Plaintiffs may be compelled to teach these ideas because the "content of continuing medical education courses—including discussion of implicit bias—constitutes government speech."[1] ECF No. 16-1 at 7.

Classifying the private content of countless CME courses, created by who knows how many physicians, on the wide range of topics from, for example, "Intraspinal Bone Fragments Resorption in Thoracolumbar Burst Fracture" to "Man With Disappearing Subconjunctival Foreign Body"[2] as *government* speech would stretch the courts' understanding of that category of speech beyond recognition. As surely as Congress does not "hide elephants in mouseholes," an implicit bias mandate does not transform all private continuing education instruction into unprotected government speech. *See Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Private physicians speaking in their private capacity about topics on which they are experts, is not government speech. The motion to dismiss should be denied.

---

[1] The Board does not address Plaintiffs' unconstitutional condition claim, ECF No. 1 ¶¶ 59–65, in their motion to dismiss. However, as that claim relies on Plaintiffs having a First Amendment right not to be compelled to include discussion of the challenged implicit bias requirement in CME courses taught by them, this Court's resolution of the pending motion to dismiss would apply to that claim.

[2] These are just two of the 7,777 CME courses available for credit on the website of the American Medical Association. *See* https://edhub.ama-assn.org/by-topic.

1

## STATUTORY AND REGULATORY BACKGROUND

California's CME requirement for licensed physicians allows for a broad range of educational courses. The 50-hour biennial requirement, Cal. Code Regs. tit. 16, § 1336(a), can be met by educational activities that "include, but are not limited to," a wide array of topics concerning medical practice, Cal. Bus. & Prof. Code § 2190.1(a). So long as a course is a proper educational activity and is accredited by the California Medical Association, American Medical Association, American Academy of Family Physicians, Accreditation Council for Continuing Medical Education, or "other organizations and institutions acceptable to" the Medical Board of California, then it counts toward the 50-hour requirement. *See* § 2190.1(g); Cal. Code Regs. tit. 16, § 1337(a)–(b). In addition to that nonexclusive array of possible topics, the legislature mandates a few specific inclusions, such as the implicit bias requirement challenged here. *See* Cal. Bus. & Prof. Code § 2190.1(d).

As to the implicit bias requirement, section 2190(d) requires that *all* courses must include "[e]xamples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in health outcomes," or "[s]trategies to address how unintended biases in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of" various individual characteristics, or a combination of both. § 2190.1(e). The law otherwise delegates to the private accrediting organizations the task of establishing standards for approving the content of the implicit bias requirement. § 2190.1(d)(3).

## STANDARD OF REVIEW

When considering a motion to dismiss, courts "must review the complaint in the light most favorable to Plaintiffs, accept their factual

allegations as true," and grant dismissal only if Plaintiffs undoubtedly "can prove no set of facts in support of [their] claims that would entitle [them] to relief." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Plaintiffs only need to plead general factual allegations, as the Court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)) (cleaned up).

## ARGUMENT

## I.   The Content of CME Courses Is Private Speech

Much like continuing legal education courses may be given by any lawyer in his or her private capacity,[3] CME courses are given by private doctors in their private capacity. This private speech is not transformed into government speech simply because there are mandates that the speaker must satisfy. Courts "must exercise great caution before extending our government-speech precedents," because the failure to do so renders the doctrine "susceptible to dangerous misuse." *Matal v. Tam*, 582 U.S. 218, 235 (2017). That is precisely the worry here. The Board argues that the "content of continuing medical education courses—including discussion of implicit bias—constitutes government speech." ECF No. 16-1 at 7. Were this Court to adopt the Board's argument, it

---

[3] Some of Plaintiffs' counsel work for Pacific Legal Foundation (PLF)—a nonprofit legal organization that defends Americans' liberties when threatened by government overreach and abuse. PLF is an accredited MCLE provider by the State Bar of California. Surely, the State Bar of California does not think PLF attorneys are speaking on its behalf when giving CLEs.

---

"would constitute a huge and dangerous extension of the government-speech doctrine."[4] *Tam*, 582 U.S. at 239.

The Supreme Court "conduct[s] a holistic inquiry" to determine whether expression is government speech. *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). In conducting that inquiry, the Court considers three main factors: (1) "the history of the expression at issue;" (2) "the public's likely perception as to who (the government or a private person) is speaking;" and (3) "the extent to which the government has actively shaped or controlled the expression." *Id.* (citing *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 209–14 (2015)). All three weigh in favor of CME course content being protected speech.

**A. There is no history of CME courses as government speech**

In considering whether the first factor is met, courts look to whether the particular type of speech has historically been an avenue for the government to speak. For example, in *Pleasant Grove City v. Summum*, the Court held that permanent monuments displayed on public property are an expression of government speech, in part, because "[g]overnments have long used monuments to speak to the public." 555 U.S. 460, 470 (2009). Similarly, in *Walker*—a case "which likely marks the outer bounds of the government-speech doctrine," *Tam*, 582 U.S. at 238—approved messages on specialty license plates were deemed government speech, in part, because "the history of license plates shows that … they have long communicated messages from the States." 576 U.S. at 210–11. In short, the factor weighed in favor of a finding of

---

[4] As there are more than 50 licensed professions in California with continuing education requirements, the implications of the Board's government speech argument are drastic.

government speech because the government has historically spoken through public monuments and specialty license plate designs.

On the other hand, in *Tam*, federal registration of trademarks did not convert the marks to government speech. 582 U.S. at 239. There, the Court recognized that trademarks—marks that the government "does not dream up" or edit—"have not traditionally been used to convey" government messages. *Id.* at 235, 238. Likewise, in *Kotler v. Webb*, No. 19-2682-GW-SKx, 2019 WL 4635168, at *6–7 (C.D. Cal. Aug. 29, 2019), this Court held that—unlike the specialty license plates in *Walker*—it was "unaware of any history of states using" custom vanity license plates to speak to the public. *See also Ogilvie v. Gordon*, No. 20-cv-01707-JST, 2020 WL 10963944, at *3 (N.D. Cal. July 8, 2020) (same).

Here, the Board fails to even argue that the content of CMEs has historically been used by the government to speak. Instead, it asserts that the "Legislature has historically used continuing education curriculum requirements as a way to ensure that licensed physicians are adequately trained in subjects the State considers essential." ECF No. 16-1 at 7. But that is not the right inquiry. Even assuming the truth of that unsupported fact,[5] all it shows is that the state wants to ensure that doctors learn certain subjects. It does not show that the state has historically used CMEs to communicate a governmental message. How doctors acquire knowledge the state deems essential—including who speaks to them—is left almost entirely to the doctors' discretion.

---

[5] To be sure, even had the Board supported the fact, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## B.  The public does not perceive the content of CMEs as coming from the government

The Board fails to explain how the public perceives CME course content as coming from the government other than noting the regulated nature of the medical profession and the requirements for continuing education. ECF No. 16-1 at 8–9. Does the regulated nature of the medical profession turn one's annual checkup into government speech? The Board does not say. Surely the public does not perceive a CME like "What Should US Policymakers Learn From International Drug Pricing Transparency Strategies?"[6] as coming from the government. Merely highlighting the government's general involvement in regulating the medical profession says nothing about to whom the public attributes the content of continuing education courses.

In *Summum*, the Court recognized that the public interprets monuments "as conveying some message on the property owner's behalf." 555 U.S. at 470–71. The fact that the monuments were on public property suggested the government was speaking. *Id.* Similarly, in *Walker*, because Texas owned the designs on specialty license plates, required drivers to display license plates, and included the state name on all plates, the specialty plate designs were more likely to be associated with the government. 576 U.S. at 212.

In contrast, in *Tam*, there was "no evidence that the public associates the contents of trademarks with the" government. 582 U.S. at 238. Indeed, the government disavowed that registration constituted approval of a mark, and the Court noted it was "unlikely that more than a tiny fraction of the public has any idea what federal registration of a

---

[6] Another course available for CME credit on the AMA's website, in which different approaches to drug pricing were compared and debated.

trademark means." *Id.* at 237. And this Court in *Kotler* recognized that, "it strain[ed] believability to argue that viewers perceive the government as speaking through personalized vanity plates." 2019 WL 4635168, at *7. *See also Ogilvie*, 2020 WL 10963944, at *3–4.

The same is true here. Physicians are required to take 50 hours of CME biennially. Cal. Code Regs. tit. 16, § 1336(a). Cal. Bus. & Prof. Code § 2190.1(a) identifies a wide array of nonexclusive topics that will be approved for credit so long as an individual course is approved by certain organizations. In addition, a few specific topics, like section 2190.1(d)'s implicit bias requirement, are also mandated. Thus, at most, viewers may view these requirements as "governmental" mandates. But just because there is a governmental mandate does not mean the public recognizes the content of those courses—which are approved and provided by private groups and physicians—as government *speech.*

Indeed, if "[t]he public understands the difference" between specialty plate designs and custom vanity license plates, *Kotler*, 2019 WL 4635168, at *7, then so too does the public understand the difference between the government requiring instruction on certain topics (not government speech) and, for example, the county health department publishing COVID-19 guidance (government speech).

## C.   The government does not control the content of CMEs

California exercises almost no control over the content of CMEs. The 7,777 courses available on the AMA's website represent just a small fraction of the courses that are eligible for CME credit in California. In none of those courses is the government exercising control over the content; content creation is left to the private physicians and accrediting organizations.

1    The lack of control over the content of CME courses stands in stark

2    contrast to *Summum*, where the Court noted the history of municipalities

3    using various methods to "exercise editorial control" over the monuments

4    they chose to erect. 555 U.S. at 472. Editorial control is necessary because

5    monuments displayed on public property are "meant to convey and have

6    the effect of conveying a government message." *Id.* Likewise, in *Walker*,

7    Texas law granted the government "sole control" over license plates, thus

8    the government had to "approve every specialty plate design proposal

9    before the design can appear on a Texas plate." 576 U.S. at 213.

10    Even though the governmental control was much greater in both

11    *Shurtleff* and *Tam* than it is here, the Court in those cases held it was

12    insufficient to invoke the government speech doctrine. In *Shurtleff*, the

13    City of Boston permitted private groups to request to display flags of their

14    choosing on one flagpole outside of city hall. 596 U.S. at 248. The Court

15    held that the display of private groups' flags on a city flagpole was not

16    government speech because the city exerted no control over the messages

17    conveyed by the flags. *Id.* at 256–57. Similarly, in *Tam*, so long as

18    trademarks sought for registration met viewpoint-neutral statutory

19    requirements, registration of the mark by the Patent and Trademark

20    Office was mandatory. 582 U.S. at 235. And in *Kotler*, while the

21    government had to approve every proposed customized vanity license

22    plate, it was "nonsensical" to conclude that government approval of

23    hundreds of thousands of custom plates in California equated to the

24    "direct control" contemplated under the Supreme Court's government

25    speech precedents. 2019 WL 4635168, at *7. *See also Ogilvie*, 2020 WL

26    10963944, at *4 ("The fact that the government exerts regulatory control

27    over speech cannot, on its own, transform that speech into government

28    speech".).

Here, the limited control the government exerts over the content discussed in CME courses does not suffice to transform the content into government speech. Aside from a few specific inclusions like the implicit bias requirement, state law merely suggests a non-exhaustive array of topics. *See* Cal. Bus. & Prof. Code § 2190.1(a). Beyond that, courses must be approved by one of many *private* accrediting organizations for the Medical Board to recognize a course for continuing education credit.[7] *See* § 2190.1(g); Cal. Code Regs. tit. 16, § 1337(a)–(b). Ultimately, the government exerts almost no control over the topics of CME courses—or their content—and instead delegates that task to private organizations.

Nor does the government exert sufficient control over the implicit bias requirement to convert content meant to satisfy that requirement into government speech. Section 2190.1(d) states that all courses must include "[e]xamples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in health outcomes," or "[s]trategies to address how unintended biases in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of" various individual characteristics, or a combination of both. § 2190.1(e). Within those parameters, the content of the requirement is left entirely to the discretion of individual instructors and private accrediting organizations. *See* § 2190.1(d)(3).

**D.  This compelled speech case is fundamentally different from government speech and school curriculum cases**

As seen in the cases discussed above, the government speech doctrine arises where the government is concerned about speech that

---

[7] If a particular course is not audited by the Medical Board, then it is presumptively approved for continuing education credit.

might be attributed *to it*. From the denial of a religious group's proposed monument, to the rejection of a specialty license plate design, the Court's government speech cases arise where the government rejects speech that might be associated with, and attributed to, the government itself.

The Board ignores that key context, which is wholly absent in this case. In fact, it fails to discuss the Court's government speech cases at any depth. Instead, the Board relies on school curriculum cases to claim that CME courses, including the implicit bias requirement, are government speech. This Court should reject those strained efforts.

All cases relied upon by the Board involve circumstances far afield from this case, where public entities or public officials are speaking. *Nampa Classical Academy v. Goesling*, 447 F. App'x 776, 778 (9th Cir. 2011), explains the Board's line of cases succinctly. There, the court held that because charter schools "are governmental entities, the curriculum presented in such a school is not the speech of teachers … but that of the [state] government." The court so held "because the message is communicated by employees working at institutions that are state-funded, state-authorized, and extensively state-regulated." *Id.* The remaining cases cited by the Board follow a similar path. *See, e.g.*, *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (public school officials free to "exercise great[] control over" expressive activities of students that "may fairly be characterized as part of the school curriculum"); *Brown v. Li*, 308 F.3d 939, 947 (9th Cir. 2002) (public university may restrict student speech so long as the "limitation is reasonably related to a legitimate pedagogical purpose"); *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1005 (9th Cir. 2000) (public high schools may decline to allow views that are "antagonistic and contrary" to the school's own to be expressed on school property to

students by one of the school's teachers).[8] None of the characteristics of the school curriculum cases are present here, where private individuals voluntarily teach CME courses to private licensed physicians, under the auspices of private organizations responsible for accrediting the courses, and largely unsupervised by the government except for the broad standards and few mandated inclusions.

Perhaps the obvious reason that government speech and school curriculum cases are inapplicable here, is that the implicit bias requirement, if not purely compelled speech, is more akin to a disclosure or notice requirement. But even if that were true, it would not implicate the government speech doctrine. For example, in *National Institute of Family and Life Advocates v. Becerra (NIFLA)*, 138 S. Ct. 2361, 2369–70 (2018), a California law mandated crisis pregnancy centers to post a "government-drafted notice on site." Because the notice requirement compelled clinics' speech, the Court analyzed the requirement as compelled—not government—speech. *Id.* at 2371. Even under *Zauderer v. Office of Disciplinary Counsel of Supreme Ct. of Ohio*, 471 U.S. 626, 650–51 (1985), mandated disclosures of "purely factual and uncontroversial information" in commercial advertising implicate an advertiser's First Amendment rights. If section 2190.1(d) only sought to

---

[8] The district court cases cited by the Board likewise fail to support its attempt to equate public school curriculum cases with this compelled speech. *See Riley's American Heritage Farms v. Claremont Unified Sch. Dist.*, No. EDCV 18-2185-JGB-SHKx, 2019 WL 3240105, at *6 (C.D. Cal. Mar. 6, 2019) (school districts enjoy "wide discretion in designing curriculum"); *California Parents for Equalization of Educational Materials v. Torlakson*, 267 F.Supp.3d 1218, 1234 (N.D. Cal. 2017) (the Fourteenth Amendment's Equal Protection Clause "does not provide a basis to challenge [public school] curriculum decisions"); *California Parents for Equalization of Educational Materials v. Noonan*, 600 F.Supp.2d 1088, 1111 (E.D. Cal. 2009) (same).

compel CME instructors to recite a governmental message verbatim—it does much more than that of course—it would still be unconstitutional compelled speech under *NIFLA*.

The Board makes much of the Court's admonishment in *Walker* that government speech can still be government speech even if "private parties take part in the design and propagation of a message." ECF No. 16-1 at 10 (quoting 576 U.S. at 217). But the Court's admonishment was made in the context of individuals submitting proposed designs for specialty license plates to the government, and once a design was accepted for use on a plate, it transformed into government speech under the Court's analysis. *See* 576 U.S. at 217. The same was true of monuments accepted for display in *Summum. Id*. The same is not true here, where as discussed above, speech made to comply with the implicit bias requirement remains private expression.

*Burwell v. Portland Sch. Dist. No. 1J*, No. 3:19-cv-00385-JR, 2019 WL 9441663, at *5 (D. Or. Mar. 23, 2019), is not to the contrary. There, parents complained that students were, among other things, required to participate in anti-gun demonstrations during school. *Id*. at *2. Considering the plaintiffs' compelled *subsidization* claim—in which plaintiffs objected to being forced to subsidize through taxes anti-gun speech with which they disagreed—the court held that including students in expressing the government school's message in favor of gun control did not prevent that message from being classified as government speech. *Id*. at *5.

Rather than "dictate" the curriculum of CME courses, ECF No. 16-1 at 11, Plaintiffs seek to not be compelled to engage in controversial speech regarding implicit bias. Perhaps the Board's quip would ring true were this a case of physicians complaining about being required to take

a course on implicit bias. In such a case, the school curriculum cases would at least superficially apply, as the doctors would be attempting to dictate curriculum they are required to take.[9] But that is not this case. Instead, this case involves private actors given broad parameters on including discussion of implicit bias in CME courses taught by them. All specifics on fulfilling those broad parameters are up to individual instructors like Plaintiffs and private organizations responsible for accrediting the courses. The government's speech is thus not at issue.

## II.   Plaintiffs Sufficiently Allege a Compelled Speech Claim

The Board contests whether Plaintiffs have sufficiently alleged a compelled speech claim due to supposedly failing to allege that complying with the implicit bias requirement would cause Plaintiffs to utter speech that is "readily associated" with them. ECF No. 16-1 at 12. The Board's argument fails for three reasons.

First, the Board gets the standard wrong. It argues that the standard for determining whether speech is compelled is whether the message is "readily associated" with an objecting plaintiff. ECF No. 16-1 at 12. It is not. Instead, courts evaluate whether the government compulsion "alters the content" of a plaintiff's speech to determine whether a plaintiff has stated a compelled speech claim. *Green v. Miss United States of America, LLC*, 52 F.4th 773, 791 (9th Cir. 2022).

At least as early as *W. Va. State Bd. of Educ. v. Barnette*, the Court recognized the importance of altered content in speech compulsion cases.

---

[9] This is how the State Bar of California mandates implicit bias training. Cal. Bus. & Prof. Code § 6070.5. Whether that mandate is constitutional is a different question not necessarily implicated by this case. To be clear, Plaintiffs do not argue here that the school curriculum cases would apply in such a case, only that the applicability of those cases could be plausibly argued. That possibility is not present here.

319 U.S. 624 (1943). There, the Court declared compulsory flag saluting and reciting of the pledge of allegiance in schools violated the First Amendment because the requirements forced students "to utter what is not in [their] mind[s]." *Id*. at 626–29, 634, 642. More recently, in *NIFLA*, the disclosure requirement was a content-based regulation of speech because it "compel[led] individuals to speak a particular message," thus "altering the content of their speech." 138 S. Ct. at 2371 (citing authorities) (cleaned up). In between *Barnette* and *NIFLA*, the Court's analysis has remained consistent. *See, e.g., Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988) (speech compelled because it "necessarily alter[ed] the content of the speech"); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 256–58 (1974) (law intruded on the right of editors to choose the content to be published); *Wooley v. Maynard*, 430 U.S. 705, 715–17 (1977) (forced individuals to use their private property as a "mobile billboard" for the state).

Here, Plaintiffs' Complaint correctly alleges that section 2190.1(d) will alter the content of their speech. For example, Dr. Khatibi alleges that because her "courses do not generally cover disparities in care, and because there is limited time available for instruction in a given course, section 2190.1(d) … prevents her from having a more robust and appropriate discussion of the topic." ECF No. 1, ¶ 33. Dr. Singleton alleges that compliance with section 2190.1(d) would force her "to include information that is not relevant to her chosen topic," and "would require her to change a portion of the talk to include information on implicit bias at the expense of other information she would prefer to include." ECF No. 1, ¶ 40. And Do No Harm alleges that at least one of its members "would not include discussion of implicit bias in the continuing medical

education courses taught by her" if not for section 2190.1(d). ECF No. 1, ¶ 47. *See also* ECF No. 1, ¶¶ 51–52.

Second, even if the Board is correct that Plaintiffs must allege that discussion of implicit bias is "readily associated" with Plaintiffs instead of the government, Defendants are incorrect that the Complaint fails to allege it. Take Dr. Singleton who alleges that "informing an audience of her disagreement with including mandatory discussion of implicit bias would be insufficient to make clear that the government's required message is not her own" because of the practical requirements of section 2190.1(d). ECF No. 1 at ¶ 41.

Third, the Board's factual *ipse dixit*—that medical professionals taking CME courses "understand that it is the Legislature and the Medical Board that set the standards for these courses and determine which courses are eligible for credit"—is wholly unsupported and otherwise improper on a motion to dismiss. ECF No. 16-1 at 12. As a result of its factual "understanding," the Board argues that "any discussion of implicit bias will be understood as coming from the Medical Board." *Id.* Whether medical professionals understand a discussion of implicit bias as coming from the course instructor or the Medical Board is a factual question not properly before this Court. And in any event, it is plainly wrong.

For the reasons discussed above, CMEs are given by private individuals in their private capacity. No listener associates the discussion on implicit bias embedded within the CME to the Board. For example, when an instructor is giving a CME on "Tubular Diskectomy vs. Conventional Diskectomy for Treatment of Sciatica,"[10] no one thinks that is the Medical Board speaking. Indeed, that is the whole reason behind

---

[10] This is another course offered for CME credit on the AMA's website.

structuring the implicit bias requirement the way section 2190.1(d) does. By forcing private individuals to talk about it *as part of their expertise*, it gives the implicit bias requirement the imprimatur as coming from these private medical experts. If the legislature wanted these experts to make an implicit bias disclosure that merely recited the state's message, it could have crafted the law that way.[11] It did not. Because it did not, section 2190.1(d) compels private individuals to alter their private speech.

Finally, if the Board is correct that "Plaintiffs fail to allege that discussion of implicit bias would be associated with them," and have thus failed to state a compelled speech claim as a result, this Court should grant Plaintiffs leave to amend the complaint. According to the Ninth Circuit, Fed. R. Civ. P. 15(a)'s policy of "freely" granting leave to amend is to be carried out "with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## CONCLUSION

For all the reasons discussed above, this Court should deny the Board's Motion to Dismiss. Should this Court grant the Board's Motion, Plaintiffs request leave to amend the Complaint.

---

[11] That too would have been unconstitutional under *NIFLA*, but it would have been more closely associated with the Board.

DATED: October 30, 2023.

Respectfully submitted,

JOSHUA P. THOMPSON,
  SBN 250955
CALEB R. TROTTER, SBN 305195
DONNA G. MATIAS, SBN 154268
CAMERON T. NORRIS, Va. Bar
No. 91624*

By___/s/ Caleb R. Trotter_____
     CALEB R. TROTTER

*Pro hac vice*

*Attorneys for Plaintiffs*
*Azadeh Khatibi, M.D.,*
*Marilyn M. Singleton, M.D., and*
*Do No Harm*