ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General
STEPHANIE ALBRECHT
Deputy Attorney General
State Bar No. 281474
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013-1230
  Telephone: (213) 269-6166
  Fax: (916) 731-2124
  E-mail: Stephanie.Albrecht@doj.ca.gov
*Attorneys for Defendants Randy W. Hawkins, President of the California Medical Board, Laurie Rose Lubiano, Vice President of the California Medical Board, Ryan Brooks, Secretary of the California Medical Board, Reji Varghese, Executive Director of the California Medical Board, and Marina O'Connor, Chief of Licensing of the California Medical Board, in their official capacities[1]*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AZADEH KHATIBI, M.D., *et al.*,**<br><br>Plaintiffs,<br><br>v.<br><br>**RANDY W. HAWKINS, in his official capacity as President of the Medical Board of California, *et al.*,**<br><br>Defendants. | 2:23-cv-06195-DSF-E<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Date: November 20, 2023<br>Time: 1:30 p.m.<br>Courtroom: 7D<br>Judge: The Honorable Dale S. Fischer<br>Trial Date: Not set<br>Action Filed: August 1, 2023 |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Randy W. Hawkins is automatically substituted as a defendant in place of his predecessor, former President of the California Medical Board Kristina Lawson, Laurie Rose Lubiano is automatically substituted as a defendant in place of her predecessor, former Vice President of the California Medical Board Randy W. Hawkins, and Ryan Brooks is automatically substituted as a defendant in place of his predecessor, former Secretary of the California Medical Board Laurie Rose Lubiano.

**TABLE OF CONTENTS**

**Page**

Introduction ............................................................................................................. 1

Argument ................................................................................................................ 2

    I.    Plaintiffs Fail to State a Free Speech Claim Because the Speech at Issue Constitutes Government Speech .............................................. 2

    II.   Even if the Speech Were Protected, Plaintiffs Fail to State a First Amendment Claim .................................................................... 8

Conclusion ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Brown v. Li*
308 F.3d 939 (9th Cir. 2002) ............................................................................. 6

*Burwell v. Portland School District No. 1J*
No. 3:19-cv-00385-JR, 2019 WL 9441663 (D. Or. Mar. 23, 2010) ............... 7, 9

*Chiras v. Miller*
432 F.3d 606 (5th Cir. 2005) ............................................................................. 6

*Downs v. Los Angeles Unified School Dist.*
228 F.3d 1003 (9th Cir. 2000) ........................................................................... 6

*Green v. Miss United States of America, LLC*
52 F.4th 773 (9th Cir. 2022) .............................................................................. 8

*Hazelwood Sch. Dist. v. Kuhlmeier*
484 U.S. 260 (1988) .......................................................................................... 6

*Johanns v. Livestock Mktg. Ass'n*
544 U.S. 550 (2005) .......................................................................................... 9

*Kotler v. Webb*
No. 19-2682-GW-SKx, 2019 WL 4635168 (C.D. Cal. Aug. 29, 2019) ........................................................................................................................... 5

*Lathus v. City of Huntington Beach*
56 F.4th 1238 (9th Cir. 2023) ............................................................................ 9

*Matal v. Tam*
582 U.S. 218 (2017) .......................................................................................... 5

*Nampa Classical Academy v. Goesling*
447 Fed. Appx. 776 (9th Cir. 2011) ............................................................. 2, 6

*National Institute of Family and Life Advocates v. Becerra (NIFLA)*
138 S.Ct. 2361 (2018) ....................................................................................... 8

*Shurtleff v. City of Boston*
596 U.S. 243 (2022) .......................................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*
   576 U.S. 200 (2015) ..................................................................... 3, 6, 7

**STATUTES**

Cal. Bus. & Prof. Code
   § 2190 ............................................................................................ 3, 4, 10
   § 2190.1 ............................................................................................ 4, 9
   § 2190.1(a) ............................................................................................ 7
   § 2190.1(b)(1) ....................................................................................... 5
   § 2190.1(d) ......................................................................................... 7, 9
   § 2190.1(d)(1) ....................................................................................... 4
   § 2190.1(d)(3) ....................................................................................... 7
   § 2190.1(e) ............................................................................................ 4
   § 2190.5 ................................................................................................. 5
   § 2190.6 ................................................................................................. 5

Cal. Code Regs. Title 16
   § 1300.4(e) ........................................................................................... 10
   § 1337 .................................................................................................... 7
   § 1337 (a) .............................................................................................. 7
   § 1337(b) ......................................................................................... 4, 10

# INTRODUCTION

Speech that the State Legislature requires to be included in continuing medical education courses necessary for state licensure constitutes government speech. Thus, the State's requirement that continuing medical education courses include discussion of implicit bias as part of their curriculum does not implicate Plaintiffs' free speech rights. The court should dismiss the complaint for failure to state any constitutional violation.

Plaintiffs contend that continuing medical education courses do not constitute government speech because the State has no control over the content of these courses. But this entire case is about the State's control over the content of these courses: Plaintiffs, who teach continuing medical education courses, claim that the State's requirement that these courses' curriculum include implicit bias training burdens Plaintiffs' free speech rights because it compels them to teach on a subject on which they would otherwise remain silent. [ECF No. 1, ¶¶ 1, 32.] Thus, the essence of Plaintiffs' First Amendment claim is that they are required to teach government-mandated content with which they disagree. And there can be no dispute that the State controls the content of continuing medical education courses. The Medical Board determines which topics must be covered, sets forth specific requirements for course content, and determines which courses are acceptable for credit.

Moreover, because the Medical Board of California "is responsible for regulating and licensing the practice of medicine in California," and the Board's Chief of Licensing is responsible "for enforcing state requirements for continuing medical education" (ECF No. 1 at ¶¶ 8, 12), licensed physicians who take continuing medical education courses to satisfy their minimum continuing educational requirement for licensure understand that the content of these courses is controlled by the State, particularly given that the courses' instructors (like Plaintiffs) are free to express their disagreement with the content. Accordingly, the

1

speech at issue constitutes government speech not subject to First Amendment protection. The Ninth Circuit has reached the same conclusion in curricular speech cases that are analogous to the instant case. *E.g., Nampa Classical Academy v. Goesling*, 447 Fed. Appx. 776, 778 (9th Cir. 2011) (curriculum presented in charter school was not the speech of teachers, parents, or students, but that of the Idaho government).

There is no danger of misuse of the government speech doctrine by applying it here. On the contrary, it would be a misuse of the First Amendment to say that private doctors—who have a choice in whether they teach continuing medical education courses—can decide whether certain topics should be included in the training of physicians who provide medical services to the public. It is the Medical Board that is responsible for regulating and licensing the practice of medicine in California and for ensuring the continuing competence of licensed physicians and surgeons. If Plaintiffs do not want to train students on implicit bias because it conflicts with their own personal views, they are not required to teach continuing medical education courses at all—there is no requirement under California law that licensed physicians must teach continuing medical education courses.

Even if the speech at issue were private speech—which it is not—the complaint fails to state a First Amendment claim because Plaintiffs do not allege that discussion of implicit bias in the courses they teach would be readily associated with them, a requirement for any compelled speech claim. And Plaintiffs have no right to teach continuing medical education courses for credit.

Accordingly, the court should dismiss the complaint with prejudice.

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A FREE SPEECH CLAIM BECAUSE THE SPEECH AT ISSUE CONSTITUTES GOVERNMENT SPEECH

As Plaintiffs acknowledge, courts consider three factors in determining whether speech constitutes government speech: (1) whether the government has

historically used the medium to speak to the public; (2) whether the message is closely identified in the public mind with the State; and (3) the degree of control the State maintains over the messages conveyed. *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 210-13 (2015). All three factors weigh in favor of finding that the content of continuing medical education courses—including discussion of implicit bias—constitutes government speech. As Plaintiffs acknowledge, the Medical Board of California "is responsible for regulating and licensing the practice of medicine in California, including enforcing the Medical Practice Act." (ECF No. 1 at ¶ 8.) The Legislature has historically used continuing education curriculum requirements as a way to ensure that licensed physicians are adequately trained in subjects the State considers essential to maintaining competence in the profession. *See* Cal. Bus. & Prof. Code, § 2190 (continuing education standards are designed "to ensure the continuing competence of licensed physicians and surgeons"). The Legislature and the Medical Board set the standards for continuing medical education and control their content. Because the State authorizes and heavily regulates the medical profession, including continuing medical education requirements, and determines which curricula will be approved for continuing medical education credit, the content of continuing medical education courses is attributable to the State.

Plaintiffs focus heavily on the third factor, the State's control over the message conveyed. They argue that the State has "no control over the content of CME's." (ECF No. 18 at 8:24-27.) But that argument contradicts the very core of their complaint: If the State does not have control over the content of continuing medical education courses, then how are Plaintiffs "compelled" to deliver content with which they disagree? (ECF No. 1, ¶¶ 1, 32.) Indeed, in their opposition, Plaintiffs emphasize how the implicit bias requirement "alters" the content of Plaintiffs' speech. (ECF No. 18 at 15:16-16:2.) By Plaintiffs' own admission then, the Legislature controls the content of continuing medical education courses.

And there can be no dispute that the State controls the content of continuing medical education courses. As Plaintiffs acknowledge, licensed physicians are required to complete 50 hours of continuing medical education every two years, and the Medical Board determines which courses are acceptable for credit. Cal. Bus. & Prof. Code § 2190 ("the board shall adopt and administer standards for the continuing education of [licensed physicians and surgeons]"); Cal. Code Regs. tit. 16, § 1337(b) ("Only those courses and other educational activities that meet the requirements of Section 2190.1 of the [Business and Professions] code" and are offered by specified organizations are acceptable for credit toward licensure); *see also* ECF No. 1 at ¶ 14 ("To qualify for credit by the Medical Board . . . ."). The Medical Board requires that course content "be directly related to patient care, community health or public health, preventive medicine, quality assurance or improvement, risk management, health facility standards, the legal aspects of clinical medicine, bioethics, professional ethics, or improvement of the physician-patient relationship." (*Id.* at ¶ 15.) And the Medical Board regularly "audits physicians for compliance with the continuing education requirement" and "audit[s] courses to determine whether the course is approved for credit." (*Id.* at ¶ 17.)

Section 2190.1 does not just require instructors to include discussion of implicit bias, but sets forth in detail the content of that discussion: To satisfy the implicit bias requirement, continuing medical education must address "[e]xamples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in health outcomes," and/or "[s]trategies to address how unintended biases in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of race, ethnicity, gender identity, sexual orientation, age, socioeconomic status, or other characteristics." Cal. Bus. & Prof. Code § 2190.1(d)(1), (e). Moreover, in addition to implicit bias, the State requires that continuing medical education courses train physicians in specific subjects the Legislature considers necessary for

4

licensure. Since 2001, licensed physicians must complete mandatory continuing education in the subjects of pain management and the treatment of terminally ill and dying patients, or they may alternatively complete a course in the treatment and management of opiate-dependent patients. Cal. Bus. & Prof. Code, §§ 2190.5, 2190.6. And since 2006, all continuing medical education courses must contain curriculum on cultural and linguistic competency. Cal. Bus. & Prof. Code, § 2190.1(b)(1).

Plaintiffs rely on three cases for their argument that the speech at issue here does not constitute government speech: *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), *Matal v. Tam*, 582 U.S. 218 (2017), and *Kotler v. Webb*, No. 19-2682-GW-SKx, 2019 WL 4635168, at *6-7 (C.D. Cal. Aug. 29, 2019). None of these cases is even remotely analogous to the instant case.

In *Shurtleff*, the Supreme Court held that Boston's flag-raising program, which allows private groups to use one of the three flag poles on the plaza in front of city hall to fly a flag of their choosing during events sponsored by these groups, did not express government speech. The Court's decision was based on the fact that, unlike here, Boston neither actively controlled the flag raisings nor shaped the messages the flags sent. 596 U.S. at 256. In *Tam*, the Supreme Court held that federal registration of trademarks did not convert the marks to government speech. Of course trademarks are not government speech: A trademark is a unique expression of a design, symbol, or word intended to represent a particular company or product. Because the essence of a trademark is association with a company or product—not the government—it could not possibly constitute government speech. Similarly, in *Kotler*, the court rejected a claim that custom vanity license plates constituted government speech because there was no history of the state using customized registration number configurations to express government messages, and viewers were unlikely to perceive the government was speaking through personalized vanity plates. And contrary to Plaintiffs' suggestion (ECF No. 18 at 9:10-28), the State

5

here surely has more control over the content of continuing medical education courses than Boston had over private groups' flags on a city flagpole, or the Patent and Trademark Office over registered trademarks, or California over the content of vanity license plates.

In contrast, cases dealing with school- and curriculum-related materials are similar to the instant case and, in those cases, courts have held that the speech at issue is not protected. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (high school paper that was published by students in journalism class was not protected speech); *Brown v. Li*, 308 F.3d 939, 951 (9th Cir. 2002) (thesis committee's refusal to approve graduate student's master's thesis did not violate student's First Amendment rights); *Nampa Classical Academy v. Goesling*, 447 Fed. Appx. 776, 778 (9th Cir. 2011) (curriculum presented in charter school was not the speech of teachers, parents, or students, but that of the Idaho government); *Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000) (bulletin board inside a school building on which faculty and staff could post materials related to gay and lesbian awareness month, and from which the school principal removed materials posted by a teacher that the principal deemed inappropriate, was government speech); *Chiras v. Miller*, 432 F.3d 606 (5th Cir. 2005) (state's selection and use of textbooks in the public school classrooms constituted government speech).

Plaintiffs cite *Walker* as an example where the speech at issue was readily associated with the State "because Texas owned the designs on specialty license plates, required drivers to display license plates, and included the state name on all plates, the specialty plate designs were more likely to be associated with the government." (ECF No. 18 at 7:17-21.) The same reasoning should be applied here: The California Legislature designs continuing medical education courses by setting forth specific content requirements, requires licensed physicians to take continuing medical education courses to maintain their State-issued medical

licenses, and determines which courses will receive credit.  Plaintiffs do not dispute this.  (ECF No. 18 at 8:5-11 ["Physicians are required to take 50 hours of CME biennially. . . . Cal. Bus. & Prof. Code § 2190.1(a) identifies . . . topics that will be approved for credit . . . . In addition, a few specific topics, like section 2190.1(d)'s implicit bias requirement, are also mandated."].)  And as the *Walker* Court explained, the fact that private instructors like Plaintiffs teach the continuing medical education curriculum set by the Legislature and Medical Board does not change the governmental nature of the speech.  576 U.S. at 217 ("The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message."); *see also Burwell v. Portland School District No. 1J*, No. 3:19-cv-00385-JR, 2019 WL 9441663, *5 (D. Or. Mar. 23, 2010) ("Simply because the government uses a third party for speech does not remove the speech from the realm of government speech. . . .  A government entity may . . . express its views even when utilizing assistance from private actors for the purpose of delivering a government-controlled message.").

    Plaintiffs argue that the Court's reasoning in *Walker* does not apply here because "speech made to comply with the implicit bias requirement remains private expression."  (ECF No. 18 at 13:4-14.)  But that is not true: While instructors like Plaintiffs may be private physicians, the continuing medical education courses they teach are not private and must be acceptable to the Medical Board.[2]  Cal. Code Regs. tit. 16, § 1337 (a).  Instructors deliver State-mandated continuing education materials to medical professionals as a condition of state licensure.  The fact that instructors are private citizens does not transform teachings of implicit bias from government speech into private speech.  Although instructors may exercise some

---

[2] While private associations may accredit continuing medical education courses, these associations are responsible for developing standards for compliance with the State's content requirements, including the implicit bias requirements. Cal. Bus. & Prof. Code § 2190.1(d)(3).  And the courses must ultimately be approved by the Medical Board of California for continuing education credit. Cal. Code Regs. tit. 16, § 1337.

7

1  discretion in how they teach continuing medical education courses, this does not
2  change the principal function of the Legislature or the Medical Board in setting
3  curriculum standards for, and overseeing, these courses.
4      Accordingly, the speech at issue here—discussion of implicit bias as part of
5  continuing medical education courses used to qualify for state licensure—
6  constitutes government speech.  As a matter of law, government speech is not
7  subject to scrutiny under the First Amendment, whether under a compelled speech
8  or unconstitutional conditions theory.

## II. EVEN IF THE SPEECH WERE PROTECTED, PLAINTIFFS FAIL TO STATE A FIRST AMENDMENT CLAIM

Plaintiffs cite *Green v. Miss United States of America, LLC*, 52 F.4th 773, 791 (9th Cir. 2022) and *National Institute of Family and Life Advocates v. Becerra (NIFLA)*, 138 S.Ct. 2361 (2018), for the argument that Plaintiffs need not allege that the speech at issue is "readily associated" with them, because courts only look to whether the alleged government compulsion "alters the content" of a plaintiff's speech to determine whether a plaintiff has stated a compelled speech claim.  (ECF No. 18 at 14:15-21.)  This is an inaccurate representations of those cases.  The Ninth Circuit in *Green* did not set forth the standard for compelled speech cases; while the court found that the compulsion at issue (inclusion in the Miss United States of America pageant of a contestant who did not meet the pageant's eligibility requirements) had the effect of altering the pageant's speech (52 F.4th at 791), nowhere did it suggest that a plaintiff need not allege that the compelled speech is readily associated with them.  Similarly, in *NIFLA*, the Court found that the notice requirement at issue "plainly alter[ed] the content" of the plaintiffs' speech (138 S.Ct. at 2371), but did not in any way suggest that association of the speech with the plaintiffs was not required.

Instead, courts require plaintiffs bringing a compelled speech claim to allege (1) speech; (2) to which they object; (3) that is compelled; and (4) that is readily

8

associated with Plaintiffs. *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 568 (2005) (Thomas, J., concurring); *Burwell v. Portland School District No. 1J* No. 3:19-cv-00385-JR, 2019 WL 9441663 (D. Or. Mar. 23, 2010), at *3; *see also Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (councilperson's insistence that plaintiff issue public statement denouncing violent group as condition for retaining her appointment did not violate First Amendment because "that speech will be perceived as the elected official's own").

As set forth in Defendants' motion, the complaint fails to allege that discussion of implicit bias as part of the continuing medical education courses that Plaintiffs teach would be readily associated with them. Nor do Plaintiffs allege that Section 2190.1 requires them to endorse the subject of implicit bias or that it prevents them from presenting their own messages on the topic. It is medical professionals who attend these courses to comply with their continuing medical educational requirements to maintain their State-issued license. They understand that because they are professionals in a State-regulated industry, it is the Legislature and the Medical Board that set the standards for these courses and determine which courses are eligible for credit. Thus, Plaintiffs fail to allege that discussion of implicit bias would be associated with them.

As for Plaintiffs' claim that "section 2190.1(d) will alter the content of their speech" (ECF No. 18 at 15:16-17), Plaintiffs cannot have it both ways. They cannot on the one hand claim they have full control over the content of the courses they teach, and then on the other hand assert that Section 2190.1 alters their speech.

Plaintiffs similarly fail to state a First Amendment claim under the unconstitutional conditions doctrine. Plaintiffs do not have a constitutional right to teach continuing medical education courses for credit. The Medical Board has ultimate discretion over the standards for the continuing education of licensed physicians and surgeons (Cal. Bus. & Prof. Code § 2190) and determines which courses are eligible for continuing medical education credit. Cal. Code Regs. tit.

16, § 1337(b); Cal. Code Regs. tit. 16, § 1300.4(e) ("Division" means the Medical Board of California).

## CONCLUSION

For these reasons and the reasons set forth in Defendants' moving papers, the court should dismiss the complaint without leave to amend.

Dated: November 6, 2023

Respectfully Submitted,

ROB BONTA
Attorney General of California
ANYA M. BINSACCA
Supervising Deputy Attorney General


/s/ Stephanie Albrecht
STEPHANIE ALBRECHT
Deputy Attorney General
*Attorneys for Defendants Randy W. Hawkins, President of the California Medical Board, Laurie Rose Lubiano, Vice President of the California Medical Board, Ryan Brooks, Secretary of the California Medical Board, Reji Varghese, Executive Director of the California Medical Board, and Marina O'Connor, Chief of Licensing of the California Medical Board, in their official capacities*