JOSHUA P. THOMPSON, SBN 250955
JThompson@pacificlegal.org
CALEB R. TROTTER, SBN 305195
CTrotter@pacificlegal.org
DONNA G. MATIAS, SBN 154268
DMatias@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
(916) 419-7111

CAMERON T. NORRIS,
Va. Bar No. 91624*
cam@consovoymccarthy.com
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
(703) 243-9423
*Pro hac vice

*Attorneys for Plaintiffs Azadeh Khatibi, M.D., Marilyn M. Singleton, M.D., and Do No Harm*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZADEH KHATIBI, M.D., an individual, MARILYN M. SINGLETON, M.D., an individual, and DO NO HARM, a Virginia nonprofit corporation,<br><br>    Plaintiffs,<br><br> v.<br><br>RANDY W. HAWKINS, in his official capacity as President of the Medical Board of California, LAURIE ROSE LUBIANO, in her official capacity as Vice President of the Medical Board of California, RYAN BROOKS, in his official capacity as | Case No.: 2:23-cv-06195-DSF-E<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Secretary of the Medical Board of California, ⎫
REJI VARGHESE, in his official capacity as ⎬
Executive Director of the Medical Board of ⎬
California, and MARINA O'CONNOR, in ⎬
her official capacity as Chief of Licensing, ⎬
Medical Board of California, ⎬
                                               ⎬
         Defendants.                           ⎭

## INTRODUCTION

1. In 2019, the California Legislature enacted Assembly Bill 241. As of January 1, 2022, all continuing medical education courses in California must include discussion of "implicit bias." But the efficacy of implicit bias training in reducing disparities and negative outcomes in healthcare is controversial in the medical community and lacks evidence. Because of that controversy, because they prefer to teach different, evidence-based subjects, and because they do not want to espouse the government's view on implicit bias, Plaintiffs Azadeh Khatibi and Marilyn Singleton, as well as at least one member of Plaintiff Do No Harm, do not want to be compelled to include discussion of implicit bias in the continuing medical education courses they teach.

2. Rather than respect the freedom and judgment of continuing medical education instructors to choose which topics to teach, California law now requires the Medical Board of California to enforce the mandate that all continuing medical education courses include discussion of implicit bias. Under the First Amendment to the United States Constitution, the government cannot compel speakers to engage in discussions on subjects they prefer to remain silent about. Likewise, the government cannot condition a speaker's ability to offer courses for credit on the requirement that she espouse the government's favored view on a controversial topic. This case seeks to vindicate those important constitutional rights.

## JURISDICTION AND VENUE

3. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over this federal claim under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred or will occur in this district.

## PARTIES

5. Plaintiff Azadeh Khatibi, M.D., is a United States citizen and resident of Los Angeles County, California. Dr. Khatibi is a California-licensed physician and board-certified ophthalmologist who has taught and organized continuing medical education courses for credit in California.

6. Plaintiff Marilyn "Marilyne" M. Singleton, M.D., is a United States citizen and resident of Los Angeles County, California. Dr. Singleton is a California-licensed physician and board-certified anesthesiologist. Dr. Singleton teaches and organizes continuing medical education courses and has done so for many years.

7. Plaintiff Do No Harm is a national nonprofit corporation headquartered in Glen Allen, Virginia. Do No Harm's membership includes at least one individual who teaches and organizes continuing medical education courses for credit in California.

8. Defendant Randy W. Hawkins is the President of the Medical Board of California, which is responsible for regulating and licensing the practice of medicine in California, including enforcing the Medical Practice Act, Cal. Bus. & Prof. Code § 2000, *et seq.* Mr. Hawkins is sued in his official capacity.

9. Defendant Laurie Rose Lubianois the Vice President of the Medical Board of California. Ms. Lubiano is sued in her official capacity.

10. Defendant Ryan Brooksis the Secretary of the Medical Board of California. Mr. Brooks is sued in his official capacity.

11. Defendant Reji Varghese is the Executive Director of the Medical Board of California and is sued in his official capacity.

12. Defendant Marina O'Connor is the Chief of Licensing for the Medical Board of California. As Chief of Licensing, Ms. O'Connor has principal responsibility for enforcing state requirements for continuing medical education, including Cal. Bus. & Prof. Code § 2190.1(d)(1). Ms. O'Connor is sued in her official capacity.

## FACTUAL ALLEGATIONS

### California's Continuing Medical Education Requirements

13. To "ensure the continuing competence of licensed physicians and surgeons," the Medical Board is responsible for "adopt[ing] and administer[ing] standards" for continuing medical education (CME). Cal. Bus. & Prof. Code § 2190.

14. Educational activities that will satisfy the Medical Board's CME standards "may include, but are not limited to, educational activities that meet any" of four criteria: contain "scientific or clinical content" directly affecting the "quality or cost-effective provision of" healthcare; address "quality assurance or improvement, risk management, health facility standards, or the legal aspects of clinical medicine"; address "bioethics or professional ethics"; and "improve the physician-patient relationship." Cal. Bus. & Prof. Code § 2190.1(a).

15. All California-licensed physicians are required to complete 50 hours of CME every two years. Cal. Code Regs. tit. 16, § 1336(a).

16. The Medical Board awards CME credit for all courses "which qualify for Category I credit from the California Medical Association or the American

Medical Association," as well as for all courses "which qualify for prescribed credit from the American Academy of Family Physicians." Cal. Code Regs. tit. 16, § 1337(a).

17. For courses taught by "other organizations and institutions" to receive credit, Cal. Code Regs. tit. 16, § 1337(a)(3), the content "shall be directly related to patient care, community health or public health, preventive medicine, quality assurance or improvement, risk management, health facility standards, the legal aspects of clinical medicine, bioethics, professional ethics, or improvement of the physician-patient relationship." *Id*. at § 1337.5(a)(3).

18. In addition to attending CME courses, and in line with the stated purpose of ensuring the continuing competence of physicians and surgeons, Cal. Bus. & Prof. Code § 2190, doctors may satisfy some of the 50-hour CME requirement through teaching CME courses, passing a "certifying or recertifying examination administered by a recognized specialty board," receiving the Physician's Recognition Award, and participating in an "approved postgraduate residency training program or approved clinical fellowship program." Cal. Code Regs. tit. 16, § 1337(c)-(f).

19. Physicians are required to attest that they satisfied the 50-hour CME requirement when renewing their licenses. Cal. Code Regs. tit. 16, § 1336(c).

20. Each year, the Medical Board randomly audits physicians for compliance with the CME requirement. Cal. Code Regs. tit. 16, § 1338(a). When reviewing a physician's documentation for completed continuing education, the Medical Board will randomly audit CME courses to determine whether the course is approved for credit. Cal. Code Regs. tit. 16, §§ 1337.5(b), 1338(d).

21. If a course is not audited by the Medical Board, it is awarded credit even though its content is never reviewed by the Medical Board so long as no complaint is received regarding the course. Cal. Code Regs. tit. 16, § 1337.5(b).

22. Should a course not qualify for credit after an audit, then physicians will not receive credit for that course. Cal. Code Regs. tit. 16, § 1337.5(c). And should a physician fail to satisfy the 50-hour requirement as a result, he or she will be required to cure the deficiency during the next renewal period. Cal. Code Regs. tit. 16, § 1338(b).

### The Challenged Law

23. Cal. Bus. & Prof. Code § 2190.1(d)(1) declares that "[o]n and after January 1, 2022, all continuing medical education courses shall contain curriculum that includes the understanding of implicit bias."

24. In order to satisfy the curriculum requirements of Cal. Bus. & Prof. Code § 2190.1(d)(1), continuing medical education courses must include "[e]xamples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in health outcomes," or "[s]trategies to address how unintended biases in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of race, ethnicity, gender identity, sexual orientation, age, socioeconomic status, or other characteristics," or a combination of both. § 2190.1(e).

### Implicit Bias Trainings Are Controversial

25. While there is no consensus definition, the concept of "implicit bias" refers to stereotypical or prejudicial beliefs or attitudes that an individual may unconsciously possess toward others, which can result in discriminatory actions taken by the implicitly biased individual when those beliefs or attitudes are activated.

26. In the context of healthcare, some people worry that a physician who holds implicit bias toward a patient under his or her care will render disparately worse care.

27. There is inconsistent evidence that implicit bias in healthcare is prevalent and results in disparate treatment outcomes.

28. Even assuming sufficient evidence exists that implicit bias in healthcare is prevalent and results in disparate treatment outcomes, there is no evidence-based consensus that trainings intended to reduce implicit bias are effective.

29. Moreover, evidence shows that implicit bias trainings can cause counterproductive anger, frustration, and resentment among those taking the trainings.

30. Because neither Cal. Bus. & Prof. Code § 2190.1 nor any other California statute or regulation sets forth recognized criteria for conducting mandated implicit bias trainings, there are no measures to assure the trainings are effective.

31. By mandating all continuing medical education instructors include training on implicit bias even though evidence-based criteria ensuring the trainings are effective does not exist, section 2190.1(d) is unlikely to address the problem of implicit bias in healthcare, if any.

### The Challenged Law Compels Plaintiffs' Speech

*Azadeh Khatibi*

32. Azadeh Khatibi was a child in Tehran during the Iranian Revolution of 1979. As a result of increasingly theocratic changes to Iranian society following the Revolution, her family joined the diaspora and uprooted to the United States, settling in Los Angeles.

33. After matriculating at UCLA, Dr. Khatibi went on to earn an M.D. from University of California, San Francisco, and master's degrees in public health and health and medical sciences from University of California, Berkeley. Now an ophthalmologist, Dr. Khatibi also teaches and organizes continuing medical education courses in California.

34. Dr. Khatibi has taught CME courses on many topics in ophthalmology, including retinal tumors, glaucoma, and other ocular diseases, as well as systemic diseases. Dr. Khatibi has also organized CME courses. All courses taught and organized by Dr. Khatibi were approved by authorized continuing medical education providers. *See* Cal. Code Regs. tit. 16, § 1337(a).

35. Other than the requirements established in section 2190.1, the content of every CME course taught by Dr. Khatibi was created and compiled by her without any supervision, approval, control, or input by any government official, including the Medical Board.

36. None of the CME courses taught by Dr. Khatibi have been audited by the Medical Board.

37. After Dr. Khatibi's courses, attendees are typically asked to fill out an evaluation. The evaluation usually includes questions asking about the effectiveness of the course and whether the course instructor possessed any bias.

38. It is not uncommon for attendees to approach Dr. Khatibi following a course taught by her to ask questions and engage in conversation about the course and material discussed.

39. CME attendees also often ask questions of Dr. Khatibi during CME courses taught by her and even debate with her.

40. Both during and after CME courses taught by Dr. Khatibi, attendees treat her as the person responsible for the content discussed.

41. In addition to the joy of sharing knowledge with others, Dr. Khatibi also benefits reputationally from teaching continuing medical education courses.

42. Dr. Khatibi wishes to continue teaching CME courses in California, but does not want to be compelled to include discussion of implicit bias in her courses when there is no relevance to her topics, or discussion of other topics is more relevant to minimize treatment outcome disparities. This is especially true given the lack of evidentiary support for implicit bias trainings and the significant

time constraints usually present in delivering CME courses, which limit the amount of information capable of being discussed.

43. Further, Dr. Khatibi disagrees that implicit bias is the primary factor driving disparities in healthcare. Thus, because Dr. Khatibi's courses do not generally cover disparities in care, and because there is limited time available for instruction in a given course, section 2190.1(d)'s mandate to include discussion of implicit bias prevents her from having a more robust and appropriate discussion of the topic. Instead, she is limited to only discussing the government's preferred topic and viewpoint.

44. Even with those limitations, because section 2190.1(d) requires Dr. Khatibi to provide "examples" or "strategies" of implicit bias herself, course attendees are likely to attribute the content of CME courses taught by Dr. Khatibi as coming from her, not the Medical Board.

45. Should Dr. Khatibi teach a course without the mandated implicit bias discussion, the course would not qualify for CME credit in California. As a result, it is unlikely that physicians would elect to take such a course.

*Marilyn M. Singleton*

46. Dr. Singleton is a board-certified anesthesiologist and past president of the Association of American Physicians and Surgeons.

47. Dr. Singleton earned her bachelor's degree from Stanford University and her medical degree from University of California, San Francisco.

48. Dr. Singleton has taught CME courses for several years. She has also organized CME courses. All courses taught and organized by Dr. Singleton were approved by authorized continuing medical education providers. *See* Cal. Code Regs. tit. 16, § 1337(a).

49. Other than the requirements established in section 2190.1, the content of every CME course taught by Dr. Singleton was created and compiled by her

without any supervision, approval, control, or input by any government official, including the Medical Board.

50. None of the CME courses taught by Dr. Singleton have been audited by the Medical Board.

51. After the courses taught by Dr. Singleton, attendees are typically asked to fill out an evaluation. The evaluation usually includes four to five questions asking about the effectiveness of the speaker and whether the speaker conveyed the stated goals of the course.

52. It is not uncommon for attendees to approach Dr. Singleton following a course taught by her to ask questions and engage in conversation about the course and material discussed.

53. Dr. Singleton is often called upon to teach CME courses and expects to be asked to do so in the future.

54. Dr. Singleton enjoys teaching CME courses and benefits financially and reputationally from doing so.

55. Should Dr. Singleton be required to include discussion of implicit bias in the courses she teaches, she would be forced to include information that is not relevant to her chosen topic. Including discussion of implicit bias in her courses would require her to change a portion of the talk to include information on implicit bias at the expense of other information she would prefer to include.

56. Further, Dr. Singleton disagrees that including discussion of implicit bias in her courses is helpful and important. To the contrary, she believes that such trainings are harmful to physicians and patients. Yet because section 2190.1(d) requires a discussion of "examples" of disparities in care resulting from implicit bias or of "strategies" to address such disparities due to implicit bias, informing an audience of her disagreement with including mandatory discussion of implicit bias would be insufficient to make clear that the government's required message is not her own. Rather, because Dr. Singleton must provide "examples" or "strategies"

herself, course attendees are likely to attribute the content of CME courses taught by Dr. Singleton as coming from her, not the Medical Board.

57. If, instead, Dr. Singleton taught a course without the mandated implicit bias discussion, the course would not qualify for continuing medical education credit in California. As a result, it is unlikely that physicians would elect to take such a course.

*Do No Harm*

58. Do No Harm's membership is comprised of physicians, healthcare professionals, medical students, patients, and policymakers united by a mission to protect healthcare from radical, divisive, and discriminatory ideologies.

59. Do No Harm's members believe that all patients deserve access to the best possible care and that barriers to care should be broken down.

60. Do No Harm's membership includes at least one individual who teaches, has taught, and intends to teach continuing medical education courses in the future for credit in California.

61. At least one of Do No Harm's members does not want to include discussion of implicit bias in the CME courses she teaches because such trainings have not been shown to successfully reduce barriers to healthcare, and instead risk infecting healthcare decisions with divisive and discriminatory ideas.

62. If not for Cal. Bus. & Prof. Code § 2190.1(d), at least one of Do No Harm's members would not include discussion of implicit bias in the CME courses taught by her.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

**Violation of Plaintiffs' First Amendment Right to Freedom of Speech**

**(42 U.S.C. § 1983)**

63. Plaintiffs reallege and incorporate by reference all allegations contained in the previous paragraphs.

64. An actual and substantial controversy exists between Plaintiffs, their members, and Defendants. All Plaintiffs and their members have the right to not speak on topics they would rather remain silent about.

65. The First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, protects the choice of Plaintiffs and their members to not include discussions of implicit bias in the continuing medical education courses taught by them.

66. On its face and as enforced by Defendants, Cal. Bus. & Prof. Code § 2190.1(d)(1) compels Plaintiffs and their members to include discussion of implicit bias in CME courses taught by them when they would otherwise remain silent about implicit bias.

67. Compelling Plaintiffs and their members to include discussion of implicit bias in the CME courses taught by them when they would otherwise remain silent about the topic burdens their rights to free speech.

68. Section 2190.1(d)(1) is a content-based restriction on Plaintiffs' and their members' freedom of speech because it mandates the discussion of a certain topic (implicit bias) in CME courses taught by them.

69. Section 2190.1(d)(1) is also a viewpoint-based restriction on Plaintiffs' and their members' freedom of speech because it mandates speech accepting the premise of implicit bias and resulting healthcare disparities due to such bias, despite the controversial nature of both propositions.

70. Section 2190.1(d)(1) is not sufficiently tailored to serve a compelling government interest.

71. There is no evidence that CME courses have historically been used by the government to communicate with the public or medical practitioners. Instead, history shows CME is used by the government to ensure physicians are competent to practice medicine.

72. There is no evidence that the public or attendees of CME courses perceive the content of CMEs as coming from the Medical Board, or the government generally, rather than the individual instructor.

73. There is insufficient evidence to show the Medical Board—rather than individual CME instructors and the private organizations approving their courses—controls the content of CMEs.

74. By requiring Plaintiffs and their members to include discussion of implicit bias in the CME courses they teach, Defendants maintain and actively enforce a set of laws, practices, policies, and procedures under color of state law that deprive Plaintiffs and their members of their right to free speech, in violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment and 42 U.S.C. § 1983.

75. Plaintiffs have no adequate remedy at law to compensate for the loss of their freedom of speech and will suffer irreparable injury absent an injunction prohibiting Defendants' enforcement of the requirement in section 2190.1(d)(1) that all CME courses include a discussion of implicit bias.

76. Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 2190.1(d)(1).

### SECOND CLAIM FOR RELIEF
**Unconstitutional Condition on Plaintiffs' First Amendment Speech Rights**
**(42 U.S.C. § 1983)**

77. Plaintiffs reallege and incorporate by reference all allegations contained in the previous paragraphs.

78. An actual and substantial controversy exists between Plaintiffs, their members, and Defendants. All Plaintiffs and their members have the right to teach continuing medical education courses for credit free from the condition that they include the government's favored message and viewpoint in their courses.

79. On its face and as enforced by Defendants, Cal. Bus. & Prof. Code § 2190.1(d)(1), in tandem with Cal. Code Regs. tit. 16, §§ 1337.5, 1338, requires CME courses to include discussion of implicit bias in order for physician attendees to receive credit for the course.

80. Conditioning the Medical Board's conferral of continuing education credit for courses taught by Plaintiffs and their members on the requirement that Plaintiffs and their members include discussion of implicit bias violates Plaintiffs' and their members' First Amendment free speech rights.

81. By conditioning the ability of Plaintiffs and their members to teach CME courses for CME credit on the requirement that they include discussion of implicit bias in the courses they teach, Defendants maintain and actively enforce a set of laws, practices, policies, and procedures under color of state law that deprive Plaintiffs and their members of their right to free speech, in violation of the First Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment and 42 U.S.C. § 1983.

82. Plaintiffs have no adequate remedy at law to compensate for the loss of their freedom of speech due to Defendants' condition and will suffer irreparable injury absent an injunction prohibiting Defendants' enforcement of the condition in section 2190.1(d)(1) that all CME courses include a discussion of implicit bias.

83. Plaintiffs are therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 2190.1(d)(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A declaration that Cal. Bus. & Prof. Code § 2190.1(d)(1), on its face and as applied to Plaintiffs, violates the First and Fourteenth Amendments to the U.S. Constitution;

B. A permanent injunction restraining Defendants and Defendants' officers, agents, affiliates, servants, successors, employees, and all other persons in

active concert or participation with Defendants from enforcing Cal. Bus. & Prof. Code § 2190.1(d)(1) against Plaintiffs and all others teaching continuing medical education courses;

  C. Judgment for Plaintiffs and against Defendants for the deprivation of Plaintiffs' rights;

  D. An award of attorney fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

  E. Any further relief as the Court may deem just, necessary, or proper.

DATED: December 22, 2023.

Respectfully submitted,

            JOSHUA P. THOMPSON, SBN 250955
            CALEB R. TROTTER, SBN 305195
            DONNA G. MATIAS, SBN 154268
            CAMERON T. NORRIS,
            Va. Bar No. 91624*

            By */s/ Caleb R. Trotter*
              CALEB R. TROTTER

            *Pro hac vice

            *Attorneys for Plaintiffs Azadeh Khatibi, M.D., Marilyn M. Singleton, M.D., and Do No Harm*