1   ROB BONTA
    Attorney General of California
2   LARA HADDAD
    Supervising Deputy Attorney General
3   STEPHANIE ALBRECHT
    Deputy Attorney General
4   State Bar No. 281474
      300 South Spring Street, Suite 1702
5     Los Angeles, CA 90013-1230
      Telephone: (213) 269-6166
6     Fax: (916) 731-2124
      E-mail: Stephanie.Albrecht@doj.ca.gov
7   *Attorneys for Defendants Randy W. Hawkins,*
    *President of the Medical Board of California,*
8   *Laurie Rose Lubiano, Vice President of the Medical*
    *Board of California, Ryan Brooks, Secretary of the*
9   *Medical Board of California, Reji Varghese,*
    *Executive Director of the Medical Board of*
10  *California, and Marina O'Connor, Chief of*
    *Licensing of the Medical Board of California, in*
11  *their official capacities*

12                  IN THE UNITED STATES DISTRICT COURT

13                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15  AZADEH KHATIBI, M.D., *et al.*,          2:23-cv-06195-DSF-E

16                                           MEMORANDUM OF POINTS
                            Plaintiffs,      AND AUTHORITIES IN SUPPORT
17                                           OF DEFENDANTS' MOTION TO
                      v.                     DISMISS FIRST AMENDED
18                                           COMPLAINT

19  RANDY W. HAWKINS, in his official        Date:        March 11, 2024
    capacity as President of the Medical     Time:        1:30 p.m.
20  Board of California, *et al.*,           Courtroom:   7D
                                             Judge:       The Honorable Dale S.
21                          Defendants.                   Fischer
                                             Trial Date:  February 25, 2025
22                                           Action Filed: August 1, 2023

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................... 1

Background ................................................................................................ 2

    I.     State Laws and Regulations Governing the Curriculum of
            Continuing Medical Education Courses ............................................. 2

        A.     Statutory Requirements on the Content of Continuing
              Medical Education Courses ......................................................... 2

        B.     Medical Board Approval and Oversight of Continuing
              Medical Education Courses ......................................................... 5

    II.    Dismissal of Plaintiffs' Original Complaint .................................. 6

    III.   Allegations in the First Amended Complaint ....................................... 7

Legal Standard ......................................................................................... 9

Argument .................................................................................................. 10

    I.     Plaintiffs Again Fail to State a Compelled Speech Claim .................. 10

        A.     As This Court Has Previously Held, Instructors Speak for
              the State When They Teach for-Credit Continuing
              Medical Education Courses ....................................................... 10

            1.    The State Has Historically Supervised Medical
                   Licensing and Used Continuing Medical Education
                   Courses to Communicate to Licensed Physicians ......... 11

            2.    Licensed Physicians Are Likely to Perceive the
                   Content of Continuing Medical Education Courses
                   as Coming from the State ............................................. 12

            3.    The State Shapes or Controls the Content of
                   Continuing Medical Education Courses ......................... 13

        B.     Even If the Speech at Issue Were Protected, Plaintiffs Fail
              to State a Compelled Speech Claim ......................................... 18

    II.    Plaintiffs Again Fail to State a Conditioned Speech Claim ............... 19

Conclusion ............................................................................................... 19

i

# TABLE OF AUTHORITIES

Page

C<small>ASES</small>

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ................................................................. 10, 13

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 555 (2007) ................................................................. 13

*Burwell v. Portland School District No. 1J*
    No. 3:19-cv-00385-JR, 2019 WL 9441663 (D. Or. Mar. 23, 2010) ........... 17, 18

*Downs v. Los Angeles Unified School Dist.*
    228 F.3d 1003 (9th Cir. 2000) ................................................................. 16

*Gearhart v. Thorne*
    768 F.2d 1072 (9th Cir. 1985) ................................................................. 11

*Hazelwood Sch. Dist. v. Kuhlmeier*
    484 U.S. 260 (1988) ................................................................. 16

*Johanns v. Livestock Mktg. Ass'n*
    544 U.S. 550 (2005) ................................................................. 18

*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008) ................................................................. 9

*Lathus v. City of Huntington Beach*
    56 F.4th 1238 (9th Cir. 2023) ................................................................. 18

*Mount Healthy School District Board of Education v. Doyle*
    429 U.S. 274, 287 (1977) ................................................................. 11

*Nampa Classical Academy v. Goesling*
    447 Fed. Appx. 776 (9th Cir. 2011) ................................................................. 16

*Pleasant Grove City v. Summum*
    555 U.S. 460 (2009) ................................................................. 10

*Sangervasi v. City of San Jose*
    No. 22-CV-07761-VKD, 2023 WL 3604308 (N.D. Cal. May 22,
    2023) ................................................................. 17

**TABLE OF AUTHORITIES**
(continued)

Page

*Shurtleff v. City of Boston, Massachusetts*
    596 U.S. 243 (2022) ................................................................. 10, 11, 13

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*
    576 U.S. 200 (2015) ................................................................. 10, 13, 17

*Watison v. Carter*
    668 F.3d 1108 (9th Cir. 2012) ................................................................. 10

**STATUTES**

California Business and Professions Code
    § 2001.1 ................................................................................................. 5
    § 2190 ............................................................................................... 3, 13
    § 2190.1 ......................................................................................... *passim*
    § 2190.1(a) .................................................................................... 1, 3, 14
    § 2190.1(b) ......................................................................................... 1, 14
    § 2190.1(b)(1) ......................................................................................... 3
    § 2190.1(c) ......................................................................................... 1, 14
    § 2190.1(c)(1) ......................................................................................... 4
    § 2190.1(c)(1)(A) ............................................................................... 4, 11
    § 2190.1(c)(1)(B) ............................................................................... 4, 11
    § 2190.1(c)(1)(C) ............................................................................... 4, 11
    § 2190.1(c)(1)(D) ............................................................................... 4, 11
    § 2190.1(d)(1) ................................................................................ 4, 9, 15
    § 2190.1(d)(3) ....................................................................................... 16
    § 2190.1(e) ...................................................................................... 4, 15
    § 2190.1(f) ............................................................................................. 5
    § 2190.2 ................................................................................................. 5
    § 2190.5 ............................................................................................ 3, 15
    § 2190.5(a) ........................................................................................... 12
    § 2190.6 ............................................................................................ 3, 15
    § 2190.15 ............................................................................................... 5
    § 2196 ................................................................................................... 12
    § 2196.1 ............................................................................................... 12
    § 2196.2 ............................................................................................... 12
    § 2196.5 ............................................................................................... 12
    § 2196.6 ............................................................................................... 12
    § 2196.8 ............................................................................................... 12

iii

1

## TABLE OF AUTHORITIES
### (continued)

2

3

Page

California Code of Regulations Title 16
    § 1336(a) ........................................................................................ 2
    § 1337 ......................................................................................... 16
    § 1337(a) ................................................................................... 5, 6
    § 1337(b) ................................................................................. 5, 14
    § 1337.5(a) ................................................................................... 6
    § 1337.5(b) ................................................................................... 6
    § 1337.5(c) ................................................................................... 6
    § 1338(a) ..................................................................................... 6
    § 1338(c) ..................................................................................... 6

**RULES**

Federal Rules of Civil Procedure
    Rule 11 ......................................................................................... 7
    Rule 12(b)(6) ............................................................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This Court previously dismissed Plaintiffs' First Amendment claims challenging California Business and Professions Code section 2190.1, subdivision (d) ("Section 2190.1") because when physicians like Plaintiffs choose to teach continuing medical education courses for credit, they "speak for the state."  ECF No. 25 at 8.  Plaintiffs' amended complaint raises no materially new factual allegations and contains the same deficiencies that previously warranted dismissal.  As in their prior complaint, Plaintiffs contend that the requirement in Section 2190.1 that for-credit continuing medical education courses include discussion of implicit bias as part of their curriculum burdens their free speech rights because it compels them to teach on a subject on which they would otherwise remain silent and conditions their speech.  These claims still rely on the incorrect premise that the speech at issue—discussion of implicit bias—constitutes private speech subject to First Amendment protection.  This Court has already rejected this premise, recognizing that instructors like Plaintiffs "speak for the state while teaching courses because they have been delegated the power to bestow credits created and required by the state for the practice of medicine."  ECF No. 25 at 8.

Plaintiffs now allege in their amended complaint that "[o]ther than the requirements in Section 2190.1," they alone create the content of the courses they teach and that there is "insufficient evidence" to show that the State controls the content of continuing medical education courses.  But the plain text of Section 2190.1 makes clear that the State controls the content of continuing medical education courses: it sets forth the topics that must be covered, with specific requirements for course content, and determines which courses are acceptable for credit.  These requirements are not limited to the challenged subdivision of Section 2190.1.  *See*, *e.g.*, § 2190.1(a)-(c).  Plaintiffs allege no materially new facts to the contrary.  And as this Court has already held, "if [Plaintiffs] want California to award state-created credits to participants in their courses, they must teach courses

1

that address the *content the legislature has decided* is essential for medical practitioners to study . . . [and] communicate the *information that the legislature requires* medical practitioners to have." ECF No. 25 at 9 (emphasis added).

Further, although nothing in the amended complaint alters the Court's previous conclusions, even if the speech at issue were private speech, Plaintiffs fail to state a compelled speech claim: they allege no new facts to support their conclusory claim that discussion of implicit bias in the courses they teach would be readily associated with them personally. They therefore cannot meet the requirements for a compelled speech claim. And Plaintiffs' conditioned speech claim similarly fails because, as this Court has already held, "[t]here is neither a requirement nor a right to teach continuing medical education courses for credit. The power to give CME credits is not a pre-existing right on which compelled speech is conditioned." ECF No. 25 at 8. Plaintiffs' amended complaint does not alter this conclusion.

Thus, because Plaintiffs have alleged no new material facts that alter the Court's prior analysis, Plaintiffs' claims fail for the same reasons as they did previously. For all of these reasons, Plaintiffs' claims should be dismissed without leave to amend.

## BACKGROUND

**I.    STATE LAWS AND REGULATIONS GOVERNING THE CURRICULUM OF CONTINUING MEDICAL EDUCATION COURSES**

### A.    Statutory Requirements on the Content of Continuing Medical Education Courses

California requires licensed physicians to complete 50 hours of approved continuing medical education every two years. Cal. Code Regs. tit. 16, § 1336(a). The Legislature has historically used continuing education curriculum requirements as a way to ensure that licensed physicians are adequately trained in subjects the

State considers essential to maintaining competence in the profession.  *See* § 2190[1]
(continuing education standards are designed "to ensure the continuing competence
of licensed physicians and surgeons").

Accordingly, the Legislature requires that continuing medical education
courses meet specific content requirements to qualify for continuing medical
education credit.  Section 2190.1 requires that medical professionals participate in
"educational activities that meet the standards of the [Medical] board and that serve
to maintain, develop, or increase the knowledge, skills, and professional
performance that a physician and surgeon uses to provide care, or to improve the
quality of care provided to patients."  § 2190.1(a).  Specifically, Section 2190.1
requires that these educational activities:

> (1) Have a scientific or clinical content with a direct bearing on the quality or cost-effective provision of patient care, community or public health, or preventive medicine.
>
> (2) Concern quality assurance or improvement, risk management, health facility standards, or the legal aspects of clinical medicine.
>
> (3) Concern bioethics or professional ethics.
>
> (4) Are designed to improve the physician-patient relationship and quality of physician-patient communication.

§ 2190.1(a).

Continuing medical education courses must train physicians in specific
subjects that the Legislature considers necessary for licensure.  Since 2001, licensed
physicians must complete mandatory continuing education in the subjects of pain
management and the treatment of terminally ill and dying patients, or alternatively
in the treatment and management of opiate-dependent patients.  §§ 2190.5, 2190.6.
And since 2006, all continuing medical education courses must contain curriculum
on cultural and linguistic competency.  § 2190.1(b)(1).

---

[1] All further statutory references are to the California Business and
Professions Code unless otherwise noted.

Section 2190.1 sets forth detailed content requirements, contrary to Plaintiffs' allegations, for courses on "cultural competency," which the Legislature has defined as "a set of integrated attitudes, knowledge, and skills that enables a health care professional or organization to care effectively for patients from diverse cultures, groups, and communities." § 2190.1(c)(1).  The statute provides that cultural competency must include, "at a minimum," the ability to "apply linguistic skills to communicate effectively with the target population"; utilize "cultural information to establish therapeutic relationships"; elicit and incorporate "pertinent cultural data in diagnosis and treatment"; and understand and apply "culturally, ethnically, and sociologically inclusive data to the process of clinical care." § 2190.1(c)(1).  Section 2190.1 also sets forth other parameters for course content, providing that cultural competency training may include "[d]iscussion on health inequities within the [transgender, gender diverse, or intersex] community, including family and community acceptance" and "[p]erspectives of diverse, local constituency groups and [transgender, gender diverse, or intersex]-serving organizations."  § 2190.1(c)(1)(A)-(D).

Since 2022, California has required that continuing medical education courses also cover implicit bias.  As with the other topics required for continuing medical education credit, Section 2190.1 sets forth specific content requirements for implicit bias training:

> [C]ontinuing medical education courses shall address at least one or a combination of the following: (1) Examples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in health outcomes. (2) Strategies to address how unintended biases in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of race, ethnicity, gender identity, sexual orientation, age, socioeconomic status, or other characteristics.

> § 2190.1(d)(1), (e).

1    The Legislature also has a long history of specifying which courses do not

2    qualify for continuing medical education credit.  For instance, between 1992 and

3    2021, curriculum geared toward the business of a medical practice, such as

4    "medical office management, billing and coding, and marketing" expressly did not

5    qualify for licensure credit as continuing medical education.  § 2190.1(f).  In 2021,

6    the Legislature changed the law to allow up to 30 percent of the total hours of

7    continuing medical education to include content on practice management designed

8    to provide better service to patients or have management content designed to

9    support managing a healthcare facility, including, but not limited to, coding or

10   reimbursement in a medical practice.  § 2190.15.

### B.    Medical Board Approval and Oversight of Continuing Medical Education Courses

13   The Legislature has delegated to the Board the approval of courses for credit,

14   which in turn authorizes private entities to teach these courses.  "Protection of the

15   public shall be the highest priority for the Medical Board of California in exercising

16   its licensing, regulatory, and disciplinary functions."  § 2001.1.  Accordingly, the

17   Board determines which courses satisfy State standards and are acceptable for

18   credit: *"Only those courses and other educational activities that meet the*

19   *requirements of Section 2190.1* of the [Business and Professions] code which are

20   offered by [specified] organizations shall be acceptable for credit."  Cal. Code

21   Regs. tit. 16, § 1337(b) (emphasis added).  The Board must also "establish criteria

22   that providers of continuing medical education shall follow to ensure attendance by

23   licensees throughout the entire course."  § 2190.2.

24   The following organizations may offer programs for continuing medical

25   education credit: The California Medical Association, the American Medical

26   Association, and the American Academy of Family Physicians.[2]  Cal. Code Regs.

27   _____

[2] Aside from the California Medical Association, the American Medical
28   Association, or the American Academy of Family Physicians, "organizations and

5

tit. 16, § 1337(a).  These organizations are long-standing, professional organizations accredited by the Accreditation Council for Continuing Medical Education; they are responsible for accrediting continuing medical education courses that comply with the requirements established by the Legislature in the code and regulations.

The Board has the authority to audit "courses or programs submitted for credit in addition to any course or program for which a complaint is received."  Cal. Code Regs. tit. 16, § 1337.5(b).  As part of the audit process, course organizers must provide to the Board the instructor's curriculum vitae; rationale for the course; course content; educational objectives; teaching methods; evidence of evaluation; and attendance records.  *Id.*  "Credit toward the required hours of continuing education will not be received for any course deemed unacceptable by the [Board] after an audit has been made."  Cal. Code Regs. tit. 16, § 1337.5(c).  In addition to auditing continuing medical education course providers, the Board also "shall audit during each year a random sample of physicians who have reported compliance with the continuing education requirement."  Cal. Code Regs. tit. 16, § 1338(a).  It constitutes unprofessional conduct for any physician to misrepresent his or her compliance with the continuing medical education requirements.  Cal. Code Regs. tit. 16, § 1338(c).

## II.   DISMISSAL OF PLAINTIFFS' ORIGINAL COMPLAINT

In their original complaint, Plaintiffs, who are individual physicians and a nonprofit corporation, raised two claims under 42 U.S.C. § 1983 for violations of

institutions acceptable to the division" may also offer programs for continuing medical education credit.  Cal. Code Regs. tit. 16, § 1337(a).  These organizations must meet specific requirements set forth in the regulations "in order to be acceptable to the Board," including "[t]he content of the course or program shall be directly related to patient care, community health or public health, preventive medicine, quality assurance or improvement, risk management, health facility standards, the legal aspects of clinical medicine, bioethics, professional ethics, or improvement of the physician-patient relationship."  Cal. Code Regs. tit. 16, § 1337.5(a).

their First Amendment rights.  ECF No. 1, ¶¶ 48-65.  Plaintiffs alleged that the State's requirement that for-credit continuing medical education courses include a discussion of implicit bias (1) burdens their free speech rights because it compels them to teach on a subject on which they would otherwise remain silent, and (2) improperly conditions their free speech rights.  Plaintiffs alleged these claims against the President, Vice President, Secretary, Executive Director, and Chief of Licensing of the Medical Board of California ("Board"), in their official capacities.  *Id.*, ¶¶ 8-12.  The Board "is responsible for regulating and licensing the practice of medicine in California."  *Id.*, ¶ 8.

On December 11, 2023, this Court dismissed Plaintiffs' claims against all Defendants, concluding: "CME instructors speak for the state while teaching courses because they have been delegated the power to bestow credits created and required by the state for the practice of medicine."  ECF No. 25 at 8.  This Court further held that "[t]he power to give CME credits is not a pre-existing right on which compelled speech is conditioned."  *Id.*

This Court granted Plaintiffs leave to file an amended complaint "if they can do so consistent with Rule 11 of the Federal Rules of Civil Procedure."  *Id.* at 9.

## III.  ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiffs filed a First Amended Complaint ("FAC") that raises the same claims as those in the original complaint.  *See* ECF No. 26, ¶¶ 63-76 (alleging violation of First Amendment); *id.*, ¶¶ 77-83 (alleging unconstitutional condition on First Amendment speech rights).  As in their prior complaint, the FAC alleges that the State's requirement that continuing medical education courses include discussion of implicit bias violates Plaintiffs' free speech rights because it compels them to "espouse the government's view" on implicit bias and conditions their ability to teach courses for credit on the requirement that they "espouse the government's favored view on a controversial topic."  *Id.*, ¶¶ 1-2.

Plaintiffs have added some additional factual assertions to their FAC, but otherwise the allegations are identical to their original complaint.  Plaintiffs Khatibi and Singleton are California-licensed physicians who have taught and organized for-credit medical education courses.  *Id.*, ¶¶ 5, 6.  They allegedly wish to continue teaching continuing medical education courses but do not want to "be compelled" to include discussion of implicit bias in their courses given the "lack of evidentiary support for implicit bias trainings" and because "such trainings are harmful to physicians and patients."  *Id.*, ¶¶ 42, 56.  However (as alleged in the prior complaint), without including a discussion of implicit bias in their courses, the courses would not qualify for continuing medical education credit in California and physicians likely would not take them.  *Id.*, ¶¶ 45, 57.  Plaintiff Do No Harm is a nonprofit corporation whose membership is comprised of physicians, healthcare professionals, medical students, patients, and policymakers "united by a mission to protect healthcare from radical, divisive, and discriminatory ideologies."  *Id.*, ¶¶ 7, 58.  Do No Harm has at least one member who teaches continuing medical education courses for credit in California but does not want to include discussion of implicit bias in her courses because such trainings have not been shown to be effective and "instead risk infecting healthcare decisions with divisive and discriminatory ideas."  *Id.*, ¶¶ 60-61.

Plaintiffs Khatibi and Singleton now allege that "other than the requirements established in section 2190.1, the content of every CME course taught by [them] was created and compiled by [them] without any supervision, approval, control, or input by any government official, including the Medical Board."  ECF No. 26, ¶¶ 35, 49.  They further allege that attendees regularly ask questions during and after the courses (*id.*, ¶¶ 38-39, 52) and Khatibi alleges, without more, that attendees "treat her as the person responsible for the content discussed" (*id.*, ¶ 40).  Moreover, because instructors are required to provide "examples or strategies" in their discussion of implicit bias, Plaintiffs assert that attendees "are likely to

1  attribute the content of CME courses" taught by them "as coming from [them], not

2  the Medical Board." *Id.*, ¶¶ 44, 56.  Khatibi and Singleton also allege that the

3  Medical Board has not audited any of the courses they have taught. *Id.*, ¶¶ 36, 50.

4      As in their prior complaint, Plaintiffs contend that Section 2190.1 "compels

5  Plaintiffs and their members to include discussion of implicit bias in continuing

6  medical education courses taught by them when they would otherwise remain silent

7  about implicit bias" (*id.*, ¶ 66) and "[c]ondition[s] the Medical Board's conferral of

8  continuing education credit for courses taught by Plaintiffs and their members on

9  the requirement that Plaintiffs and their members include discussion of implicit

10  bias" (*id.*, ¶ 80).  Plaintiffs now allege that "[t]here is no evidence" that the

11  government has historically used continuing medical education courses to

12  communicate with the public or medical practitioners or that attendees attribute the

13  content of these courses to the State or Medical Board. *Id.*, ¶¶ 71-72.  Plaintiffs

14  further assert that "[t]here is insufficient evidence to show that the Medical

15  Board—rather than individual CME instructors and the private organizations

16  approving their courses—controls the content of CMEs." *Id.*, ¶ 73.

17      Plaintiffs seek a declaration that Section 2190.1(d)(1), on its face and as

18  applied to them, violates the First and Fourteenth Amendments of the United States

19  Constitution, a permanent injunction restricting the enforcement of Section

20  2190.1(d)(1), and an award of fees, costs, and expenses. *Id.*, Prayer at ¶¶ A-B, D.

21                          **LEGAL STANDARD**

22      Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be

23  dismissed for failure to state a claim upon which relief can be granted.  "A Rule

24  12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or

25  'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson*

26  *v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (citation

27  omitted).  "To survive a motion to dismiss, a complaint must contain sufficient

28  factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" cannot survive a motion to dismiss.  *Id.* at 678 (citation omitted).

Dismissal without leave to amend is appropriate when the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (internal quotation marks and citation omitted).

## ARGUMENT

### I.  PLAINTIFFS AGAIN FAIL TO STATE A COMPELLED SPEECH CLAIM

#### A.  As This Court Has Previously Held, Instructors Speak for the State When They Teach for-Credit Continuing Medical Education Courses

"When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (citing *Pleasant Grove City v. Summum,* 555 U.S. 460, 467-68 (2009)).  "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Summum*, 555 U.S. at 467.  Government speech is thus "not subject to scrutiny under the Free Speech Clause." *Id.*  Courts consider three factors in determining whether speech constitutes government speech: (1) the history of the expression at issue; (2) the public's likely perception as to who (the government or a private person) is speaking; and (3) the extent to which the government has actively shaped or controlled the expression. *Shurtleff v. City of Boston, Massachusetts*, 596 U.S. 243, 252 (2022) (citing *Walker*, 576 U.S. at 214)).  Courts conduct a holistic inquiry "driven by a case's context rather than the rote application of rigid factors" to determine whether speech is government or private speech. *Shurtleff*, 596 U.S. at 252.  Here, all three factors weigh in favor of finding that the content of continuing

medical education courses constitutes government speech; Plaintiffs have alleged no materially new facts to alter that analysis.

### 1. The State Has Historically Supervised Medical Licensing and Used Continuing Medical Education Courses to Communicate to Licensed Physicians

Plaintiffs now allege that "[t]here is no evidence" that the government has historically used continuing medical education courses to communicate with the public or medical practitioners.  ECF No. 26, ¶ 71.  As a threshold matter, it is Plaintiffs' burden to show that the speech at issue is subject to First Amendment protection, not the Defendants' burden to show that the speech is not protected. *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985) ("In a section 1983 action based on the first amendment, the plaintiff has the burden of alleging constitutionally protected speech.") (citing *Mount Healthy School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977)).  Moreover, as this Court has noted, "the proper inquiry considers the history of government supervision of licensing requirements for medical practitioners, not California's specific history."  ECF No. 25 at 6 (citing *Shurtleff*, 596 U.S. at 253).

Moreover, Plaintiffs are plainly wrong.  As described above, the Legislature has a longstanding history of using continuing education curriculum requirements as a way to ensure that licensed physicians are adequately trained in subjects the State considers essential to maintaining competence in the profession, and the Medical Board is responsible for enforcing these requirements.  The Legislature also uses continuing medical education courses to communicate to physicians information that it deems important to the practice of medicine.  For example, on the subject of cultural competency, the Legislature has determined that training should include "[d]iscussion on health inequities within the [transgender, gender diverse, or intersex] community, including family and community acceptance" and "[p]erspectives of diverse, local constituency groups and [transgender, gender diverse, or intersex]-serving organizations."  § 2190.1(c)(1)(A)-(D).  Regarding

11

pain management and the treatment of terminally ill and dying patients, continuing medical education courses must include discussion of "the risks of addiction associated with the use of Schedule II drugs." § 2190.5(a).

The State also requires the Medical Board to "periodically develop and disseminate information and educational material . . . to each licensed physician and surgeon" regarding the detection and treatment of child, elder, spousal or partner abuse and neglect; pain management techniques and procedures; chronic disease; assessing a patient's risk of abusing or diverting controlled substances; and the Controlled Substance Utilization Review and Evaluation System. §§ 2196, 2196.1, 2196.2, 2196.5, 2196.6, 2196.8.

> **2.   Licensed Physicians Are Likely to Perceive the Content of Continuing Medical Education Courses as Coming from the State**

Plaintiffs also now allege that "[t]here is no evidence" that attendees attribute the content of continuing medical education courses to the State or Medical Board. ECF No. 26, ¶ 72.  Again, it is Plaintiffs' burden to show that attendees attribute the content of continuing medical education courses to instructors.  In any event, they cannot make this showing.  Because the State authorizes and heavily regulates the medical profession and requires licensed physicians to take continuing medical education courses to maintain their State-issued medical licenses, it is only logical that physicians who take State-mandated continuing medical education courses to maintain their State-issued license understand how their profession is regulated, that the State sets the licensing requirements, and that the State controls the content for courses they are required to take to maintain their State-issued license.  *See* ECF No. 25 at 6 ("Common sense therefore suggests that attendees know CME courses are approved for credits required by the Medical Board of California in order for doctors to maintain their licenses – in other words, the state.").

Plaintiff Khatibi now contends, without more, that attendees "treat her as the person responsible for the content discussed."  ECF No. 26, ¶ 40.  But the Court is

"not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, taking that bare assertion to its logical conclusion, the government would never be able to use private persons to communicate its message if that alone were enough to attribute that message to those private individuals. But that is clearly not the law. *Walker*, 576 U.S. at 217 ("[T]he fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message . . . .").

Plaintiffs also claim that because instructors are required to provide "examples or strategies" in their discussion of implicit bias, attendees "are likely to attribute the content of continuing medical education courses" taught by Plaintiffs "as coming from [them], not the Medical Board." ECF No. 26, ¶¶ 44, 56. But this contention ignores the undisputed fact that Plaintiffs are free to communicate to students that the content of their courses should be attributed to the State, not to the instructors. Nothing in Section 2190.1 prevents Plaintiffs from voicing that content is State mandated or their disagreement with the "government's preferred viewpoint" on the topic of implicit bias. *See* ECF No. 26, ¶ 43.

### 3. The State Shapes or Controls the Content of Continuing Medical Education Courses

In their FAC, Plaintiffs allege that "[t]here is insufficient evidence to show the Medical Board—rather than individual CME instructors and the private organizations approving their courses—controls the content of CMEs." ECF No. 26, ¶ 73. Yet it is evident from the plain text of the code that the Legislature sets the standards for continuing medical education and, at a minimum, "shapes" the content of continuing medical education courses. *See Shurtleff*, 596 U.S. at 252. The Medical Board determines which courses are acceptable for credit. § 2190 ("the board shall adopt and administer standards for the continuing education of [licensed physicians and surgeons]"). Section 2190.1 requires that course content

relate to the quality or cost-effective provision of patient care, community or public health, or preventive medicine; concern quality assurance or improvement, risk management, health facility standards, or the legal aspects of clinical medicine; concern bioethics or professional ethics; and is designed to improve the physician-patient relationship and quality of physician-patient communication. § 2190.1(a). "Only those courses and other educational activities that meet the requirements of Section 2190.1" and are offered by specified organizations are acceptable for credit toward licensure. Cal. Code Regs. tit. 16, § 1337(b).

Plaintiffs Khatibi and Singleton also newly allege that "other than the requirements established in section 2190.1, the content of every CME course taught by [them] was created and compiled by [them] without any supervision, approval, control, or input by any government official, including the Medical Board." ECF No. 26, ¶¶ 35, 49. They further contend that attendees regularly ask questions during and after the courses, implying that "attendees treat [the instructor] as the person responsible for the content discussed." *Id.*, ¶¶ 38-40, 52. But these allegations contradict the very core of Plaintiffs' complaint: If the State does not have control over the content of continuing medical education courses, then as a matter of logic Plaintiffs cannot be "compelled" to deliver content with which they disagree. And Section 2190.1 does not just control the content of the implicit bias discussion, but sets forth numerous other, detailed content requirements. *See, e.g.,* § 2190.1(a)-(c). Although instructors may exercise some discretion in how they teach continuing medical education courses and answer questions about the content, by Plaintiffs' own admission, they must comply with all of the content requirements of Section 2190.1, not just the requirement concerning implicit bias. And if continuing education courses omitted implicit bias or any other State-mandated content, the courses would not satisfy Section 2190.1's content standards, would not be eligible for State credit, and the Medical Board would reject them upon an audit.

Thus, there can be no dispute that the State shapes or controls the content of continuing medical education courses.  While the State does not create a word-for-word script for continuing medical education courses, that is not the standard, and the Legislature has set out specific criteria for its continuing medical education program, including specific content requirements, to which instructors must adhere.  As discussed above, licensed physicians must complete mandatory continuing education in the subjects of pain management and the treatment of terminally ill and dying patients, or alternatively in the treatment and management of opiate-dependent patients subject to approval by the Board.  §§ 2190.5, 2190.6.  And as also discussed above, continuing medical education courses must also contain curriculum on cultural and linguistic competency, which should include "[d]iscussion on health inequities within the [transgender, gender diverse, or intersex] community, including family and community acceptance" and "[p]erspectives of diverse, local constituency groups and [transgender, gender diverse, or intersex]-serving organizations."  § 2190.1(b)-(c).  With respect to implicit bias, Section 2190.1 sets forth in detail the content of that discussion:  To satisfy the implicit bias requirement, continuing medical education must address "[e]xamples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in health outcomes," and/or "[s]trategies to address how unintended biases in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of race, ethnicity, gender identity, sexual orientation, age, socioeconomic status, or other characteristics."  § 2190.1(d)(1), (e).

Although instructors may exercise some discretion in *how* they teach continuing medical education courses, this does not change the principal function of the Legislature in setting curriculum standards for, and overseeing, these courses.  While the State has identified three organizations that may accredit continuing medical education courses, these organizations develop standards to comply with

1   the State's content requirements, including the implicit bias requirements.

2   § 2190.1(d)(3).  But the courses must ultimately be acceptable to the Medical Board

3   of California for continuing education credit.  Cal. Code Regs. tit. 16, § 1337.

4   Thus, it is only logical that these organizations seek to ensure organizers'

5   compliance with Section 2190.1 lest they put organizers at risk of failing a Medical

6   Board audit by approving courses that do not meet the requirements of Section

7   2190.1, which would impact the license status of physicians who attend these

8   courses and put these organizations' approval via regulation in jeopardy.  And just

9   because the Medical Board has not yet audited Plaintiffs for compliance does not

10  mean that it will not do so in the future.[3]

11       As this Court has already found, "if [Plaintiffs] want California to award state-

12  created credits to participants in their courses, they must teach courses that address

13  the content the legislature has decided is essential for medical practitioners to study.

14  And they must communicate the information that the legislature requires medical

15  practitioners to have."  ECF No. 25 at 8.  For these reasons, the content at issue in

16  this case is analogous to school curricular cases in which the Supreme Court and

17  the Ninth Circuit have held that curriculum-related materials are not protected

18  speech.  *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (high school

19  paper that was published by students in journalism class was not protected speech);

20  *Nampa Classical Academy v. Goesling*, 447 Fed. Appx. 776, 778 (9th Cir. 2011)

21  (curriculum presented in charter school was not the speech of teachers, parents, or

22  students, but that of the Idaho government); *Downs v. Los Angeles Unified School*

23  *Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000) (bulletin board inside a school building

24  on which faculty and staff could post materials related to gay and lesbian awareness

25  ─────────────

26       [3] Plaintiffs suggest that the State does not control the content of continuing
    medical education courses because these courses are approved for credit without the
27  State regularly auditing them.  ECF No. 26, ¶ 21.  But how frequently the State
    audits courses is irrelevant to the First Amendment analysis—what is important is
28  that the State has the power to audit courses and to ensure they satisfy State
    standards for credit.

month, and from which the school principal removed materials posted by a teacher that the principal deemed inappropriate, was government speech).

The fact that private instructors like Plaintiffs teach the continuing medical education curriculum set by the Legislature and Medical Board does not transform government speech into private speech.  *Walker*, 576 U.S. at 217 ("[T]he fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message . . . ."); *Burwell v. Portland School District No. 1J*, No. 3:19-cv-00385-JR, 2019 WL 9441663, *5 (D. Or. Mar. 23, 2010) ("Simply because the government uses a third party for speech does not remove the speech from the realm of government speech. . . .  A government entity may . . . express its views even when utilizing assistance from private actors for the purpose of delivering a government-controlled message."); *Sangervasi v. City of San Jose*, No. 22-CV-07761-VKD, 2023 WL 3604308, at *4 (N.D. Cal. May 22, 2023) ("The government may enlist private persons to convey its governmental message, by deputizing private persons as its agents.").

Thus, Plaintiffs' role in delivering the State-prescribed continuing medical education content to medical professionals as a precondition to state licensure does not transform teachings of implicit bias from government speech into private speech.  Although instructors may exercise some discretion in how they teach continuing medical education courses, this does not change the principal function of the Legislature or the Medical Board in setting curriculum standards for, and overseeing, these courses.  "CME instructors speak for the state while teaching courses because they have been delegated the power to bestow credits created and required by the state for the practice of medicine."  ECF No. 25 at 8.  Plaintiffs have alleged no new facts to the contrary.

**B.**   **Even If the Speech at Issue Were Protected, Plaintiffs Fail to State a Compelled Speech Claim**

To allege a compelled speech claim, Plaintiffs must allege (1) speech; (2) to which they object; (3) that is compelled; and (4) that is readily associated with Plaintiffs. *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 568 (2005) (Thomas, J., concurring); *Burwell*, 2019 WL 9441663, at *3; *see also Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (elected official's insistence that her representative, as a condition for retaining her appointment, issue a public statement denouncing violent group did not violate First Amendment because "that speech will be perceived as the elected official's own").

Plaintiffs fail to allege any materially new facts to show that teaching an understanding of implicit bias as part of the continuing medical education courses that they teach would be readily associated with them.  Instead, they allege that because Section 2190.1 requires them to provide examples or strategies in their discussion of implicit bias, "course attendees are likely to attribute the content of CME courses taught by [them] as coming from [them]."  ECF No. 26, ¶¶ 44, 56. But Plaintiffs do not allege that Section 2190.1 requires them to endorse the subject of implicit bias or that it prevents them from presenting their own messages on the topic.  And nothing prevents Plaintiffs from communicating to their course attendees that the topic of implicit bias should not be associated with them and that they are only covering it because the law requires them to.  It is medical professionals that attend these courses to comply with their continuing medical educational requirements to maintain their State-issued license.  Undoubtedly these professionals understand that it is the Legislature and the Medical Board that set the standards for these courses and determine which courses are eligible for credit, and nothing in the statute or relevant regulations prohibit Plaintiffs from making that clear.

18

## II.   PLAINTIFFS AGAIN FAIL TO STATE A CONDITIONED SPEECH CLAIM

Finally, Plaintiffs have alleged no new facts to state a First Amendment claim under the unconstitutional conditions doctrine.  As this Court has already found: "The power to give CME credits is not a pre-existing right on which compelled speech is conditioned.  Rather, it is a power delegated and voluntarily assumed." ECF No. 25 at 8.  Instructors have been delegated the power to bestow credits created and required by the State for the practice of medicine but they are not required, nor do they have a right, to teach continuing medical education courses for credit.  Their claim should therefore be denied.

## CONCLUSION

Accordingly, the Court should dismiss the FAC without leave to amend.

Dated:  January 19, 2024                         Respectfully Submitted,

ROB BONTA
Attorney General of California
LARA HADDAD
Supervising Deputy Attorney General


/s/ Stephanie Albrecht
STEPHANIE ALBRECHT
Deputy Attorney General
*Attorneys for Defendants Randy W. Hawkins, President of the Medical Board of California, Laurie Rose Lubiano, Vice President of the Medical Board of California, Ryan Brooks, Secretary of the Medical Board of California, Reji Varghese, Executive Director of the Medical Board of California, and Marina O'Connor, Chief of Licensing of the Medical Board of California, in their official capacities*