JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AZADEH KHATIBI, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>RANDY HAWKINS, et al.,<br><br>        Defendants. | Case No. 2:23-cv-06195-MRA-E<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND [ECF 29]** |

      Before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, which challenges the constitutionality of California Business & Professions Code Section 2190.1(d)(1). ECF 29. This Court (Hon. Dale S. Fischer presiding) previously dismissed Plaintiffs' complaint with leave to amend. ECF 25. This case was reassigned to Hon. Mónica Ramírez Almadani on February 23, 2024. ECF 31. Pursuant to the Court's Reassignment Order, all pending motions were taken under submission without oral argument. ECF 33; *see also* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the Motion without leave to amend.

## I. FACTUAL & PROCEDURAL BACKGROUND[1]

On August 1, 2023, Plaintiffs Azadeh Khatibi, Marilyn Singleton, and Do No Harm filed this action against several officers of the Medical Board of California (the "Medical Board" or "Board") in their official capacities, alleging violations of Plaintiffs' First Amendment rights. ECF 1 (Complaint). Khatibi and Singleton are California-licensed physicians who have taught and organized continued medical education ("CME") courses for credit in California. ECF 26 (First Amended Complaint) ¶¶ 5, 6. Do No Harm is a national nonprofit corporation whose membership includes at least one individual who teaches CME courses in California. *Id.* ¶ 7.

The State of California requires licensed physicians to complete at least 50 hours of approved CME every two years. *Id.* ¶ 15; Cal. Code Regs. tit. 16 § 1336(a). The Board is responsible for "adopt[ing] and administer[ing] standards" for CME. ECF 26 ¶ 13; Cal. Bus. & Prof. Code § 2190. The Board has approved courses accredited by private associations. ECF 26 ¶ 16; Cal. Code Regs. tit. 16, § 1337(a)(1)-(2). Courses taught by "other organizations and institutions" may also qualify for CME credit provided the programming meets certain criteria set by the Board. ECF 26 ¶ 17; Cal. Code Regs. tit. 16, §§ 1337(a)(3), 1337.5. All CME courses, regardless of the program or provider, must meet the requirements set forth under Cal. Bus. & Prof. Code § 2190.1. *See* Cal. Code Regs. tit. 16, § 1337(b) ("Only those courses and other educational activities that meet the requirements of Section 2190.1 of the code which are offered by these organizations shall be acceptable for credit under this section."). The Board does not pre-screen courses for regulatory compliance, but instead audits courses submitted for credit at random or when a complaint is received. ECF 26 ¶¶ 20-21; Cal. Code Regs. tit. 16, § 1337.5(b).

---

[1] When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is required to presume that all well-pleaded allegations are true, resolve all reasonable doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In 2019, the California State Legislature enacted Assembly Bill 241, codified at Cal. Bus. & Prof. Code § 2190.1(d)-(e). ECF 26 ¶ 1. Section 2190.1(d)(1) provides that, as of January 1, 2022, "all [CME] courses shall contain curriculum that includes the understanding of implicit bias."[2] Cal. Bus & Prof. Code § 2190.1(d)(1). To satisfy this requirement, CME courses must address at least one or a combination of "[e]xamples of how implicit bias affects perceptions and treatment decisions of physicians and surgeons, leading to disparities in outcomes," or "[s]trategies to address how unintended bias in decisionmaking may contribute to health care disparities by shaping behavior and producing differences in medical treatment along lines of race, ethnicity, gender identity, sexual orientation, age, socioeconomic status, or other characteristics."[3] *Id.* § 2190.1(e).

Plaintiffs allege two claims in their original and amended complaints: that the State requirement that CME courses include discussion of implicit bias (1) is a content-based and viewpoint-based restriction on their freedom of speech because it compels them to accept the premise of implicit bias and its impact on healthcare disparities; and (2) serves to unconstitutionally condition the conferral of credits for their CME courses on foregoing their First Amendment right to not discuss implicit bias. ECF 26 ¶¶ 66-69, 77-83.

On December 11, 2023, the Court dismissed both claims with leave to amend. ECF 25. Pursuant to *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022), the Court conducted a "holistic inquiry," considering several types of evidence—including the history of expression at issue, the public's likely perception as to whether the government is speaking,

---

[2] However, CME courses "dedicated solely to research or other issues that does not include a direct patient care component or a course offered by a [CME] provider that is not located in this state is not required to contain curriculum that includes implicit bias in the practice of medicine." Cal. Bus. & Prof. Code § 2190.1(d)(2).

[3] In addition, "[a]ssociations that accredit [CME] courses" were required to "develop standards before January 1, 2022, for compliance with the requirements of [§ 2190(d)(1)]" and are allowed to "update these standards, as needed, in conjunction with an advisory group established by the association that has expertise in the understanding of implicit bias." *Id.* § 2190.1(d)(3).

and the extent to which the government has actively shaped or controlled the expression—to determine whether Plaintiffs' CME courses constitute government speech or private expression. ECF 25 at 5-7. The Court found that Plaintiffs had failed to "plead [any] factual content to allow the inference that the Board does not exercise control over the content of CME courses," and that "it [was] not clear whether attendees are likely to attribute the content of CME courses to the instructor or to the state (the entity that compels their attendance)." *Id.* at 6-7. When Plaintiffs choose to teach CME courses for credit, the Court held that "[they] do not speak for themselves, but for the state," and their free speech rights are therefore not implicated by Section 2190.1(d). *Id.* at 9. The Court further held that "[t]he power to give CME credits is not a pre-existing right on which compelled speech is conditioned." *Id.* at 8.

On December 22, 2023, Plaintiffs timely filed an amended complaint. ECF 26. Plaintiffs now allege that "there is no evidence" that the government has historically used CME courses to communicate with the public or medical practitioners, or that attendees attribute the content of these courses to the State or Medical Board. *Id*. ¶¶ 71-73. They also allege that each of their CME courses "was created and compiled by [them] without any supervision, approval, control, or input by any government official, including the Medical Board." *Id.* ¶¶ 35, 49. They state that their CME courses have never been audited by the Board and that attendees regularly ask questions and complete course evaluations. *Id.* ¶¶ 36-39, 50-52. Moreover, because Section 2190.1(d) requires that CME instructors provide "examples" or "strategies" regarding implicit bias, Plaintiffs now allege that course attendees are likely to attribute the content of CME courses as coming from them, not the State. *Id.* ¶¶ 44, 56.

On January 19, 2024, Defendants filed the instant Motion to Dismiss (hereinafter the "Motion"), arguing that the amended complaint "raises no materially new factual allegations and contains the same deficiencies that previously warranted dismissal." ECF 29-1 at 6. Specifically, Defendants argue that "[Plaintiffs'] claims still rely on the incorrect premise that the speech at issue—discussion of implicit bias—constitutes private speech

subject to First Amendment protection." *Id.* They insist that, "even if the speech at issue were private speech, Plaintiffs fail to state a compelled speech claim: they allege no new facts to support their conclusory claim that discussion of implicit bias in the courses they teach would be readily associated with them personally." *Id.* at 7. Furthermore, Defendants contend that Plaintiffs' conditioned speech claim fails for the same reasons the Court previously dismissed the claim: there is no requirement or right to teach CME courses for credit. *Id.*

Plaintiffs filed their Opposition to the Motion on February 20, 2024, arguing, *inter alia*, that "[p]rivate physicians speaking in their private capacity about topics on which they are experts, is not government speech." ECF 30 at 7. Defendants filed their Reply in support of the Motion on February 27, 2024, emphasizing that "State-mandated curriculum requirements for [CME] courses necessary for state licensure constitutes government speech because when physicians like Plaintiffs choose to teach [CME] courses for credit, they 'speak for the state,' as this Court has already held." ECF 32 at 5.

## II. **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (per curiam). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court "must accept as true all the factual allegations contained in the complaint," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678

(citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Federal Rule of Civil Procedure 15(a) provides that after a party has amended a pleading once as a matter of course, it may amend further only after obtaining leave of the court, or by consent of the adverse party. In general, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, dismissal without leave to amend is appropriate when "it is clear that granting leave to amend would [be] futile." *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) (internal quotations omitted).

## III. DISCUSSION

### A. Failure To State a Cognizable Compelled Speech Claim

The First Amendment, made applicable to the States by incorporation into the Fourteenth Amendment, provides that the government "shall make no law. . . abridging the freedom of speech." U.S. Const. amend. I; *see New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964). But "[w]hen the government speaks, it is not barred . . . from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015). Government speech is thus "not subject to scrutiny under the Free Speech Clause." *Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009).

This case is about whether teaching CME courses in California for state-issued credits constitutes government speech or private expression. The Supreme Court explained in *Shurtleff* how "[t]he boundary between government speech and private expression can blur when . . . a government invites the people to participate in a program." 596 U.S. at 252. In that context, courts must conduct a "holistic inquiry designed to determine whether

-6-

the government intends to speak for itself or regulate private expression." *Id.* Courts consider "several types of evidence to guide the analysis, including: the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Id.*

The Court considers each type of evidence as alleged in the amended complaint.

### 1. *History of Expression at Issue*

Defendants contend that the Legislature has a longstanding history of using CME curriculum requirements "to ensure that licensed physicians are adequately trained in subjects the State considers essential to maintaining competence in the profession." ECF 29-1 at 16. Plaintiffs do not dispute this. ECF 30 at 14. Instead, they maintain that this "uncontroversial statement" "does not show that the state has historically used CMEs to communicate a governmental message, much less communicate a message to the general public." *Id.*

Plaintiffs argue that CME courses are unlike traditional forms of government expression, which the government has historically used to speak. *Id.* at 13-14. The Court agrees, as it previously held, that "CME courses are not 'designed as a means of expression.' Governments do not have the same history of using them to communicate to the general public as monuments and flags." ECF 25 at 6 (quoting *Summum*, 555 U.S. at 470). However, Plaintiffs' insistence that the Court directly contrast the speech at issue here with public monuments (*Summum,* 555 U.S. 460), flags (*Shurtleff*, 596 U.S. 243), specialty license plates (*Walker*, 576 U.S. 200), and federal trademarks (*Matal v. Tam*, 582 U.S. 218 (2017)) is not persuasive. *See* ECF 30 at 13-14. Comparing dissimilar forms of government expression leads to illogical results. This is why, as the Supreme Court explained in *Shurtleff*, the government-speech inquiry is "driven by a case's context rather than the rote application of rigid factors." *See* 596 U.S. at 252, 253-54 (considering the general history of flag-flying and the details of the specific flag-flying program at issue).

The proper inquiry considers the history of government supervision of licensing requirements for medical practitioners. As the Court recognized in its prior dismissal order, "[s]ince the nineteenth century, establishing the qualifications required to practice medicine within a state has been deemed a proper exercise of the legislature's police power." ECF 25 at 3 (citing *Hawker v. New York*, 170 U.S. 189, 193 (1898)); *see also* 1876 Cal. Stat., ch. 518, pp. 792-794 (indicating that California has required those practicing medicine in the state to comport with licensing and training requirements since at least 1876). In fact, "[i]t is too well settled to require discussion at this day that the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health." *Watson v. Maryland*, 218 U.S. 173, 176 (1910). This power "authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure [its people] against the consequences of ignorance." *Dent v. West Virginia*, 129 U.S. 114, 122 (1889). "As one means to this end it has been the practice of different states . . . to exact in many pursuits a certain degree of skill and learning upon which the community can confidently rely." *Id.* Critically, "[t]he nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity." *Id.*

For decades, CME programming in California has "ensure[d] the continuing competence of licensed physicians and surgeons." Cal. Bus. & Prof. Code § 2190 (added 1980; amended 2011). Through legislation, the State has determined that physicians can satisfy the CME requirement through educational activities that meet any of the following curricular criteria:

> (1) Have a scientific or clinical content with a direct bearing on the quality or cost-effective provision of patient care, community or public health, or preventative medicine.
> (2) Concern quality assurance or improvement, risk management, health facility standards, or the legal aspects of clinical medicine.
> (3) Concern bioethics or professional ethics.
> (4) Are designed to improve the physician-patient relationship and quality of physician-patient communication.

Cal. Bus. & Prof. Code § 2190.1(a).

Over time, the State has mandated additional CME requirements based on its evolving "judgment as to their necessity." *Dent*, 129 U.S. at 122. In 2006, recognizing the need "to meet the cultural and linguistic concerns of a diverse patient population," 2005 Cal. Legis. Serv. ch. 514, the Legislature mandated that all CME courses "contain curriculum that includes cultural and linguistic competency in the practice of medicine." Cal. Bus. & Prof. Code § 2190.1(b). Since 2019, licensees have been required to complete mandatory coursework in "the subject of the risks of addiction associated with the use of Schedule II drugs." *Id.* § 2190.5(a). As an alternative to this requirement, the Legislature has authorized physicians to complete coursework in "the subject of treatment and management of opiate-dependent patients." *Id.* § 2190.6. Since 2021, licensees have been required to complete mandatory coursework in "the subjects of pain management and the treatment of terminally ill and dying patients." *Id.* § 2190.5(a)(1). Consistent with this longstanding practice, the Legislature promulgated A.B. 241 to address implicit bias, which in its judgment has "contribute[d] to health disparities by affecting the behavior of . . . licensees." 2019 Cal. Legis. Serv. ch. 417.

While Plaintiffs do not wish to teach implicit bias because they do not agree that it contributes to health disparities, they do not otherwise question the State's authority to set CME programming requirements. *See* ECF 30 at 14. In fact, as noted above, Plaintiffs concede that "history shows CME is used by the government to ensure physicians are competent to practice medicine." ECF 26 ¶ 71. Logically, the Legislature has accomplished this goal by (a) requiring physicians to complete a certain number of approved CME hours, (b) communicating through curricula requirements the subjects it views as essential for continued medical practice in the State, and (c) delegating authority to the Board to approve CME courses for credit and oversee compliance. *See generally* Cal. Code Regs. tit. 16, §§ 1336(a), 1337; Cal. Bus. & Prof. Code div. 2, ch. 5, art. 10.

Accordingly, the Court finds that the State's history of regulating medical licensure and its longstanding practice of using continuing education requirements as part of this licensing scheme supports the finding that teaching CME courses is government speech.

### 2. *Likely Perception as to Who Is Speaking*

In determining whether the government intends to speak for itself, the Court must also consider the likely perception that the speech at issue will be attributed to the government. Plaintiffs contend that the public is not likely to recognize CME course content as government speech because courses are taught by private individuals. ECF 30 at 16. Specifically, Plaintiffs now allege that "[t]here is no evidence that the public or attendees of CME courses perceive the content of CMEs as coming from the Medical Board, or the government generally, rather than individual instructors." ECF 26 ¶ 72. Khatibi further alleges that "attendees treat her as the person responsible for the content discussed" because she is evaluated and asked questions by course attendees, *id.* ¶¶ 37-39, and she would be required to provide "examples" or "strategies" related to implicit bias, *id.* ¶ 44. Singleton makes similar allegations. *Id.* ¶¶ 51-52, 56. Moreover, Plaintiffs argue that "the public understand[s] the difference between the government requiring private organizations to develop CME courses covering certain topics to be taught by private instructors and, for example, the Medical Board itself creating and communicating information on detecting child abuse directly to every doctor and hospital in California." ECF 30 at 17.

The Court is unpersuaded by Plaintiffs' arguments. Plaintiffs voluntarily teach CME courses for credits created and approved by the State. They are free to teach medical courses in their private capacity in California or elsewhere, but when they are communicating medical knowledge required by the Board to satisfy this State's licensing requirements, they are conveying what the California Legislature has deemed essential for the continued practice of medicine. *See* ECF 25 at 9. Because of the highly regulated nature of the medical profession, those licensed physicians taking Plaintiffs' CME courses—the audience for the challenged expression—are likely to perceive the course

content as coming from the State, not private individuals. As Defendants explain, physicians "understand how their profession is regulated, that the State sets the licensing requirements, and that the State controls the content of courses they are required to take to maintain their State-issued license." ECF 29-1 at 17.

Plaintiffs' pleaded facts actually support this understanding. Plaintiffs allege that if they do not discuss implicit bias in their CME courses, and their courses are not approved for CME credit as a result, physicians are unlikely to take their courses. ECF 26 ¶¶ 45, 57. Taken to their logical conclusion, these facts lead to the inference, as the Court explained in its prior order, that physicians take Plaintiffs' CME courses because they know the content meets State requirements and comes from the State. *See* ECF 25 at 6.

The Court considers the public-school curriculum context an imperfect yet helpful analogy. In that context, the Ninth Circuit has explained that "school teachers have no First Amendment right to influence curriculum as they so choose" because such a rule would allow the teacher "to do to the government what the government could not do to [the teacher]: compel it to embrace a viewpoint." *Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003, 1012, 1015-16 (9th Cir. 2001) (holding that a school bulletin board on which faculty and staff could post materials was "an example of the government opening up its own mouth"); *see also Nampa Classical Academy v. Goesling*, 447 Fed. App'x. 776, 778 (9th Cir. 2011) (holding that curriculum taught in a charter school is government speech because "the message is communicated by employees working at institutions that are state-funded, state-authorized, and extensively state-regulated"). Certain "activities may fairly be characterized as part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988) (holding that school newspaper was curricular).

Plaintiffs, like public school educators, are furthering state-mandated learning outcomes when they teach approved CME courses. Their courses are authorized by the

State to satisfy strict requirements to practice in a State-regulated profession. *See Nampa*, 447 Fed. App'x. at 777-78 (finding that although operated by a private entity, a charter school is authorized by and extensively regulated by the State such that its curriculum is government speech). As with public-school curriculum, CME curriculum is subject to oversight and approval by government officials. *See Downs*, 228 F.3d at 1016 (identifying oversight by school officials as evidence that the school, not private persons, are responsible for the speech at issue). That Plaintiffs are evaluated and asked questions by course attendees—like most educators—and must come up with "examples" and "strategies" related to implicit bias—a pedagogical technique applicable to virtually any educational topic—does not alter the reasonable inference that CME curriculum itself, when approved for credit, is "conveying some message on the government's behalf." *Walker*, 576 U.S. at 212 (quoting *Summum*, 555 U.S. at 471) (internal quotations omitted).

      Plaintiffs argue that the school curriculum cases are inapposite because those cases involve "public entities or public officials" speaking, not private individuals voluntarily teaching continuing education courses. *See* ECF 30 at 21. That a private speaker serves as the messenger, however, "does not extinguish the governmental nature of the message." *Walker*, 576 U.S. at 217. The Supreme Court has consistently affirmed that the government can "enlist[] private entities to convey its own message." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995); *see also Summum*, 555 U.S. at 468 ("A government entity may exercise [its] freedom to express its views when it receives assistance from private sources for the purpose of delivering a government-controlled message."); *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550, 562 (2005) (holding that the government "is not precluded from relying on the government-speech doctrine merely because it solicits assistance from nongovernmental sources . . ."). "[I]n that kind of situation, private persons assume a public or quasi-public capacity." *Shurtleff*, 596 U.S. at 270 (Alito, J., concurring) (internal quotations omitted). "So long as that responsibility is voluntarily assumed, speech by a private party within the scope of his power to speak for the government constitutes government speech." *Id.*

Accordingly, the Court finds that Plaintiffs are likely to be perceived as speaking for the State, not themselves, when discussing implicit bias in for-credit CME courses.

### 3. *Extent of Government Shaping and Control of Expression*

In its prior dismissal order, the Court held that Plaintiffs pleaded "no factual content to allow the inference that the Board does not exercise control over the content of CME courses." ECF 25 at 7. Plaintiffs now allege that "[o]ther than the requirements established in section 2190.1," the content of their CME courses "was created and compiled by [them] without any supervision, approval, control, or input by any government official, including the Medical Board." ECF 26 ¶¶ 35, 39. As a result, Plaintiffs assert that "[t]here is insufficient evidence to show the Medical Board—rather than individual CME instructors and private organizations approving their courses—controls the content of CMEs." *Id.* ¶ 73.

By its plain text, the statutory language contradicts Plaintiffs' conclusory statement. Section 2190.1(d) is no aberrant exercise of state authority over CME curriculum. The Legislature has recommended courses for the Board to approve for CMEs, prescribed certain topics, and delegated authority to the Board to set additional CME standards. *See* Cal. Bus. & Prof. Code §§ 2190, 2190.1-2190.6, 2191. The Legislature even dictates which practitioners are exempt from certain CME requirements, *see* Cal. Bus. & Prof. Code §§ 2190.1(b)(2), 2190.1(d)(2), 2190.5(b)-(c), and which courses do not qualify for CME credit. *Id.* § 2190.1(f) (determining those educational activities "directed primarily toward the business aspects of medical practice" do not meet the CME standards for physicians and surgeons). Pursuant to regulation, the Board in turn determines the programs approved for CME credit, the criteria CME courses must meet to be accepted for credit, and the process by which it will ensure CME providers' compliance with CME requirements. Cal. Code Regs. tit. 16 §§ 1337, 1337.5. Even course evaluations, which Plaintiffs newly plead in support of their position, are mandated by regulation, and thus shaped and controlled by the State. Cal. Code Regs. tit. 16, § 1337.5(a)(6) (requiring all CME courses to "include

an evaluation method which documents that educational objectives have been met"). Notably, Plaintiffs do not challenge any of these other State requirements for CME courses.

Plaintiffs argue that by relying on private entities to teach and accredit CME courses, the Board has, in effect, "outsourced the implementation of standards to private organizations and instructors." ECF 30 at 17; ECF 26 ¶¶ 16, 20-21. This is not accurate. Private physicians may teach CME courses; private institutions may organize the programming; private associations may yet approve courses for their own accreditation purposes. *See* Cal. Code Regs. tit 16 § 1337(a)(1)-(2). But contrary to Plaintiffs' assertions, private entities have no say on which courses are ultimately approved to satisfy the State's CME requirement. The Board alone has that final authority. *See generally id.* § 1337.

Although the Board does not pre-screen courses for credit, it reserves the right to "randomly audit courses or programs submitted for credit in addition to any course or program for which a complaint is received." *Id.* § 1337.5(b). When an audit is made, course organizers are required to submit documentation verifying compliance with CME criteria set by the Board. *Id.* That Khatibi's and Singleton's courses have yet to be audited, ECF 26 ¶¶ 36, 50, does not negate that their courses are subject to the State's audit in the first instance. In other words, the Board has the final say over whether their courses qualify for credit. *See Walker*, 576 U.S. at 213 (describing "final approval authority" as evidence of the government controlling the message); *Downs*, 228 F.3d at 1015-16 (finding that school bulletin boards constituted government speech because the school "had final authority over the content of the bulletin boards" even if school officials were not "spend[ing] the majority of their days roaming the school's halls strictly policing" the content). The Court concludes that the State exerts a significant degree of control over the content of CME courses.

The holistic government-speech inquiry firmly resolves in favor of finding that teaching CME courses in California constitutes government speech. Accordingly,

Plaintiffs have not stated a claim that the government has compelled them to engage in protected speech subject to First Amendment scrutiny.

### B. Failure To State a Cognizable Conditioned Speech Claim

Plaintiffs plead that they have "the right to teach [CME] courses for credit free from the condition" that they include discussion of implicit bias. ECF 26 ¶ 78. The Court reiterates that "[t]here is neither a requirement nor a right to teach continuing medical education courses for credit." ECF 25 at 8. That teaching approved CME courses is one means by which Plaintiffs can partially satisfy their CME hours does not alter this finding. ECF 26 ¶ 18; Cal. Code Regs. tit. 16, § 1337(c).

Plaintiffs' sole citation in support of their novel conditioned speech theory is *Perry v. Sinderman*, 408 U.S. 593, 597 (1972), in which the Supreme Court held that "even though a person has no right to a valuable government benefit . . . [the government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry* concerned a public employee whose employment was not renewed allegedly in retaliation for his exercise of free speech rights.

While Plaintiffs are correct in stating that the government cannot condition a benefit on a constitutionally impermissible basis, that principle is not at issue here. *First,* as explained above, the First Amendment does not protect the speech at hand. *Second*, unlike the public employment at issue in *Perry*, CME credits are not government benefits, but rather confer a delegation of state authority. *Cf. id.* (characterizing as government benefits tax exemptions, unemployment benefits, welfare payments, and public employment). CME programming is an essential means by which the government exercises its authority to safeguard public health. When the State approves courses taught by private instructors for credits, it is not bestowing upon the instructor any kind of benefit; it is permitting the instructor to speak for the State. *See* ECF 25 at 8.

Were any individual voluntarily teaching continuing education courses required for State professional licensing able to enjoin State-mandated curriculum they deem

controversial on free speech grounds, "it is not easy to imagine how government could function." *Summum*, 555 U.S. at 467-68. If Plaintiffs disagree with the Legislature's judgment in passing A.B. 241, they can choose to no longer instruct CME courses for credit, as is their right, or err their grievances at the ballot box because "it is the democratic electoral process that first and foremost provides a check on government speech." *Walker*, 576 U.S. at 207. In the instant action, however, Plaintiffs have not presented a cognizable legal theory that would allow the Court to reasonably infer that they have been deprived of a right "secured by the Constitution and laws." 42 U.S.C. § 1983. Therefore, Plaintiffs have not met their burden of stating a claim upon which relief can be granted.

### C. Dismissal Without Leave to Amend

While Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given, leave is "not to be granted automatically." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015). Where "the pleading could not possibly be cured by the allegation of other facts," the district court acts within its discretion in denying leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Defendants contend that further amendment would be futile. ECF 29-1 at 15.

In its prior dismissal order, the Court found that Plaintiffs had not pleaded sufficient facts to allow the inference that the speech at issue is constitutionally protected. ECF 25 at 6-7. In response, Plaintiffs amended their pleading to newly allege certain facts in support of their claims. *See* ECF 26 ¶¶ 35-40, 44, 49-52. Their alleged injury, claims, and theory of liability, however, remain unchanged.

The Court now finds that the underlying facts and circumstances relied upon by Plaintiffs are not "the proper subject of relief" warranting a renewed "opportunity to test [their] claims on the merits." *Foman*, 371 U.S. at 182. Plaintiffs lack a cognizable legal theory, not just facts to support a cognizable legal theory. *See Johnson*, 534 F.3d at 1121.

Notwithstanding Plaintiffs' new allegations, the *Shurtleff* analysis once again permits only one reasonable inference: legally, when the government requires all CME courses include discussion of implicit bias in order to qualify towards state-mandated licensing, it is transmitting its own message, not compelling or conditioning private speech. *See Shurtleff*, 596 U.S. at 252.

Based on Plaintiffs' reliance on legal conclusions and the substantial factual similarities between the original and amended complaints, the Court determines that Plaintiffs have no additional material facts to plead. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009). For the sake of analysis, even if Plaintiffs were to allege in an amended pleading that all the physicians they personally know would likely perceive the speech as coming from private persons, that would not prove that the speech is private speech. Indeed, given the overwhelming evidence of government shaping and control and the history of expression at issue, the holistic inquiry set forth in *Shurtleff* would still resolve in the Court finding that State-mandated discussion of implicit bias, among other CME curriculum requirements, is "meant to convey and ha[s] the effect of conveying a government message." *Walker*, 576 U.S. at 216 (quoting *Summum*, 555 U.S. at 472). The Court is not required to mechanically tally factors in conducting the government-speech analysis. *See Shurtleff*, 596 U.S. at 258. Thus, granting leave to amend would be futile. *See Lathus*, 56 F.4th at 1243.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF 29) is **GRANTED** without leave to amend. The Court hereby DISMISSES this action with prejudice and further ORDERS the Clerk to treat this Order as an entry of judgment. L.R. 58-6.

**IT IS SO ORDERED.**

Dated: May 2, 2024

HON. MÓNICA RAMÍREZ ALMADANI
UNITED STATES DISTRICT JUDGE